DENISE M. HARLE, GA BAR NO. 176758
dharle@adflegal.org
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road NE, Suite D-1100
Lawrenceville, Georgia 30043
(770) 339-0774
(770) 339-6744 FAX

KEVIN H. THERIOT, AZ Bar No. 30446*
ktheriot@adflegal.org
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax

CATHERINE SHORT, CA Bar No. 117442
kshort@lldf.org
LIFE LEGAL DEFENSE FOUNDATION
PO Box 1313
Ojai, CA 93024
(707) 337-6880

*Attorneys for Plaintiffs*
*Application for Admission Pro Hac Vice forthcoming*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 1  **CHRISTIAN MEDICAL &** **DENTAL ASSOCIATIONS** and 2  **LESLEE COCHRANE, M.D.**, 3     Plaintiffs, 4  v. 5  **ROB BONTA**, in his official capacity as Attorney General of the State of 6  California; **TOMÁS J. ARAGÓN, M.D., DR. P.H.**, in his official 7  capacity as the Director of the California Department of Public 8  Health and as the State Public Health Officer; and **KRISTINA D.** 9  **LAWSON, J.D., RANDY W.** **HAWKINS, M.D., LAURIE ROSE** 10 **LUBIANO, J.D., RYAN BROOKS, ALEJANDRA CAMPOVERDI,** 11 **DEV. GNANADEV, M.D., JAMES M. HEALZER, M.D., ASIF** 12 **MAHMOOD, M.D., DAVID RYU, RICHARD E. THORP, M.D.,** 13 **ESERICK WATKINS, AND FELIX C. YIP, M.D.**, in their official 14 capacities as members of the Medical Board of California, 15 16     Defendants. | Case No. **VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND ATTORNEYS' FEES AND COSTS** |

17     Plaintiffs Christian Medical & Dental Associations and Leslee Cochrane,

18 M.D., by and through counsel, and for their Verified Complaint against the

19 Defendant, hereby state as follows:

20     1.   Despite historical condemnations of physician involvement in suicide, in

21 2015 California passed the End of Life Options Act, which legalized physician-

22 assisted suicide. *See* CAL. HEALTH & SAFETY CODE § 443.

23

1

2.     Despite the medical-ethics consensus that, even where the practice is allowed, no physician should be forced to participate in assisted suicide, the State of California recently eliminated important safeguards from the End of Life Options Act and now forces conscientious physicians to participate in assisted suicide in several ways.

3.     Plaintiff Christian Medical & Dental Associations ("CMDA"), a national association of conscientious Christian health care professionals whose personal religious convictions and professional ethics oppose the practice of assisted suicide, brings this action on behalf of its members, and Plaintiff Leslee Cochrane, M.D., a CMDA member, brings this action on behalf of himself. ("CMDA" includes individual Plaintiff Dr. Cochrane throughout this Complaint, unless otherwise indicated).

4.     Plaintiffs challenge the operation of SB 380 to force them to participate in assisted suicide.

## JURISDICTION AND VENUE

5.     This action arises under the Constitution and laws of the United States. The Court has subject-matter jurisdiction pursuant to the Civil Rights Act, 42 U.S.C. § 1983, and 28 U.S.C. § 1331 (federal question), and it has jurisdiction to render declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 65, and to award reasonable attorneys' fees and costs under the Civil Rights Act, 42 U.S.C. § 1988.

6.     Venue lies in this district pursuant to 28 U.S.C. § 1391 because the California government and its agencies are citizens of every district in California.

**PLAINTIFFS**

7.   Plaintiff CMDA is a national nonprofit organization, headquartered in Tennessee, of Christian physicians and allied health care professionals, with about 16,000 members nationally. CMDA members include California-licensed physicians, including Leslee Cochrane, M.D.

8.   CMDA sues on behalf of its California members.

9.   CMDA members seek to live out their Christian beliefs in their practice of health care, including their belief in the sanctity of human life. It would violate their consciences to participate in assisted suicide in any way.

10.   CMDA members in California include physicians who work in the hospice setting or specialize in oncology, who frequently treat patients with terminal diseases, and physicians in specialties including cardiology, internal medicine, and family medicine, who occasionally treat patients with terminal diseases.

11.   Over 90% of CMDA members would rather stop practicing medicine than be forced to participate in assisted suicide or other practices in violation of their consciences.

12.   Dr. Leslee Cochrane is a CMDA member and full-time hospice physician in California, who is board certified in family medicine with a certificate of additional qualification in hospice and palliative medicine.

13.   He seeks to live out his Christian beliefs in his practice of health care, including his belief in the sanctity of human life. It would violate his conscience to participate in assisted suicide in any way.

14.   In his job as a full-time hospice physician, Dr. Cochrane sees terminally ill patients on a daily basis and is required to engage in discussions with terminally ill patients regarding their diagnosis, prognosis, and treatment options.

15.   Dr. Cochrane works in a hospice that does not provide assisted suicide, but which serves all patients, regardless of whether the patient chooses to obtain assisted suicide drugs from an outside physician, and regardless of whether the patient ultimately chooses to ingest the assisted suicide drugs. Dr. Cochrane and the other physicians in his hospice will not, however, affirmatively participate in assisted suicide in any way.

16.   In his role as a full-time hospice physician, Dr. Cochrane has witnessed firsthand that terminally ill patients experiencing severe pain can have very dramatic changes in disposition once their pain is controlled.

17.   In his role as a full-time hospice physician, Dr. Cochrane has witnessed firsthand that terminally ill patients can experience physical, mental, or emotional distress that is temporary in nature, yet which lasts longer than two days.

18.   In his role as a full-time hospice physician, Dr. Cochrane has witnessed firsthand that terminally ill patients can experience mental, emotional, and spiritual exhaustion that leaves them vulnerable to being easily manipulated by family members into a course of action that the family members want for the patient, even if it is contrary to the patient's own desires.

19.   In his role as a full-time hospice physician, Dr. Cochrane has observed at least one case where a patient had questionable mental capacity, yet the patient's

1  family members were strongly pressuring the patient to go through with assisted
2  suicide.

3  20.  In addition to his strongly held religious beliefs that assisted suicide is
4  morally unacceptable, Dr. Cochrane also asserts that participating in assisted suicide
5  in any way would be contrary to his best medical professional judgment and medical
6  ethics.

7  21.  If Dr. Cochrane is forced to participate in assisted suicide in violation of his
8  conscience, he would leave the profession or relocate from the State of California.

9  **DEFENDANTS**

10  22.  Defendant Rob Bonta is a citizen of California and the Attorney General of
11  California. His authority is delegated to him by Article V, section 13 of the
12  California Constitution. Bonta is sued in his official capacity as California Attorney
13  General.

14  23.  Defendant Bonta is authorized to enforce the laws of the state of California,
15  including the End of Life Options Act.

16  24.  Defendant Tomás J. Aragón, M.D., Dr. P.H., is a citizen of California and
17  serves as the Director of the California Department of Public Health and as the State
18  Public Health Officer. He is appointed by the Governor and his authority is delegated
19  to him by CAL. HEALTH & SAFETY CODE § 131005. He is sued in his official capacity
20  as the Director of the California Department of Public Health and the State Public
21  Health Officer.

22

23

25.  Defendant Aragón is empowered to enforce California laws, regulations, and professional standards relating to the practice of medicine, including the End of Life Options Act.

26.  Defendants Kristina D. Lawson, J.D.; Randy W. Hawkins, M.D., Laurie Rose Lubiano, J.D.; Ryan Brooks; Alejandra Campoverdi; Dev GnanaDev, M.D.; James M. Healzer, M.D.; Asif Mahmood, M.D.; David Ryu; Richard E. Thorp, M.D.; Eserick Watkins; and Felix C. Yip, M.D., are citizens of California and members of the Medical Board of California and are sued in their official capacity as such.

27.  These members of the Medical Board of California are empowered to enforce California laws, regulations, and professional standards relating to the practice of medicine, including the End of Life Options Act.

## FACTUAL BACKGROUND

28.  For 2,500 years the medical profession has forbidden doctors from giving patients lethal drugs. Society relies on this prohibition and trusts physicians to be healers when that is possible, and to provide comfort when healing is no longer possible.

29.  In the last 30 to 40 years, hospice and palliative care organizations within medicine and in the community have sought and promoted greater control over the physical, psychological, social, and spiritual distresses that so often affect individuals approaching death and their families. The common goal is life with dignity until natural death occurs.

30.   This commitment has historically been embodied in the Hippocratic Oath, versions of which members of the profession take upon entering it.

31.   Various translations of the original Oath are available, but they all contain something akin to the following: "I will not give lethal drug to anyone if I am asked, nor will I advise such a plan[.]" Michael North, *Greek Medicine*, NATIONAL LIBRARY OF MEDICINE (2002), https://www.nlm.nih.gov/hmd/greek/greek_oath.html.

32.   Respect for conscientious objections by medical professionals in the context of taking life has been specifically recognized by the U.S. Supreme Court, including in *Roe v. Wade* in 1973, in which the Supreme Court quoted the AMA House of Delegates resolution that,

> [N]o physician or other professional personnel shall be compelled to perform any act which violates his good medical judgment. Neither physician, hospital, nor hospital personnel shall be required to perform any act violative of personally-held moral principles.

410 U.S. 113, 143 n. 38 (1973).

33.   Despite coming under attack from time to time, the idea that a health care professional should not be forced to participate in acts that violate their "good medical judgment" or "personally-held moral principles" has long been widely accepted, as reflected in federal appropriations protections for conscientiously objecting health care professionals that have been passed since the 1970s, such as the "Church Amendments" (42 U.S.C. §§ 300a-7(b)–(e)), the Weldon Amendment (Sec. 507(d) of Title V of Division H (Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act) of the

1  Consolidated Appropriations Act, 2016 Pub. L. No. 114-113), and provisions of the

2  Affordable Care Act (42 U.S.C. §§ 18023(b)(4), 18113(a)).

3      34.   For example, 42 U.S.C. § 300a-7(d) of the Church Amendments provides:

4      **Individual rights respecting certain requirements contrary to religious beliefs or moral convictions.** No individual shall be required

5      to perform or assist in the performance of any part of a health service program or research activity funded in whole or in part under a program

6      administered by the Secretary of Health and Human Services if his performance or assistance in the performance of such part of such

7      program or activity would be contrary to his religious beliefs or moral convictions.

8      35.   Specific to physician-assisted suicide, the Affordable Care Act at 42 U.S.C.

9  § 18113(a) provides:

10     The Federal Government, and any State or local government or health care provider that receives Federal financial assistance under this Act

11     (or under an amendment made by this Act) or any health plan created under this Act (or under an amendment made by this Act), may not

12     subject an individual or institutional health care entity to discrimination on the basis that the entity does not provide any health care item or

13     service furnished for the purpose of causing, or for the purpose of assisting in causing, the death of any individual, such as by assisted

14     suicide, euthanasia, or mercy killing.

15     36.   When the U.S. Supreme Court took up the issue of whether there exists a

16  "fundamental right" to physician-assisted suicide in *Washington v. Glucksberg*, it

17  agreed with the American Medical Association ("AMA") that "[p]hysician-assisted

18  suicide is fundamentally incompatible with the physician's role as healer." 521 U.S.

19  702, 731 (1997) (quoting AMA, Code of Ethics § 2.211 (1994)).

20     37.   Today the AMA's code of ethics still holds that "[p]hysician assisted suicide

21  is fundamentally incompatible with the physician's role as healer, would be difficult

22  or impossible to control, and would pose serious societal risks." AMERICAN MEDICAL

23  ASSOCIATION, CODE OF MEDICAL ETHICS § 5.7, available at https://bit.ly/35gicR9.

38.   The AMA's Code of Medical Ethics, in § 1.1.7, also says:

> Preserving opportunity for physicians to act (or refrain from acting) in accordance with the dictates of conscience in their professional practice is important for preserving the integrity of the medical profession as well as the integrity of the individual physician, on which patients and the public rely. Thus physicians should have considerable latitude to practice in accord with well-considered, deeply held beliefs that are central to their self-identities.

### The Original End of Life Options Act

39.   Despite the historical prohibition against physician participation in suicide, and the present prohibition in the AMA's Code of Medical Ethics, the End of Life Options Act took effect in 2016, legally authorizing the practice of physician-assisted suicide in California. *See* CAL. HEALTH & SAFETY CODE §§ 443, *et seq.*

40.   The End of Life Options Act initially authorized physician-assisted suicide only when certain requirements were met, including, but not limited to: (1) the patient had to make two oral requests, at least 15 days apart, and then a witnessed, written request; and (2) the physician had to first determine that the patient (a) had "the capacity to make medical decisions," (b) had "a terminal disease," (c) made the requests voluntarily, and (d) understood "[h]is or her medical diagnosis and prognosis," alternative care options, the "potential risks" and "probable result of ingesting the aid-in-dying drug," and that he or she could end up getting the drug but not taking it. CAL. HEALTH & SAFETY CODE §§ 443.3(a)–443.5(a)(2) (as enacted in 2015).

41.   The original End of Life Options Act provided broad protections for conscientiously declining "participation":

> Notwithstanding any other law, a health care provider is not subject to civil, criminal, administrative, disciplinary, employment, credentialing,

9

professional discipline, contractual liability, or medical staff action, sanction, or penalty or other liability for refusing to participate in activities authorized under this part, including, but not limited to, refusing to inform a patient regarding his or her rights under this part, and not referring an individual to a physician who participates in activities authorized under this part.

CAL. HEALTH & SAFETY CODE §§ 443.14(e)(2) (as enacted in 2015, available at https://bit.ly/35fDUER).

### SB 380's Amendments to the End of Life Options Act

42.  SB 380 reduces the End of Life Options Act's minimum time between a patient's two required oral requests for a prescription for lethal drugs from 15 days to 48 hours. *See* CAL. HEALTH & SAFETY CODE § 443.3(a).

43.  SB 380 requires a physician whose patient requests assisted suicide to document the request in that patient's medical record, even if the physician objects to participating in assisted suicide in any way. *Id.* at § 443.14(e)(2).

44.  Even if a physician conscientiously objects to participating in assisted suicide, that documentation will satisfy the first oral request requirement for assisted suicide. *Id.* at § 443.3(a).

45.  SB 380 requires the objecting physician to transfer the records of that first oral request to a second physician upon the patient's request. *Id.* at §§ 443.14(e)(2), (4).

46.  Although SB 380 states that "a person or entity that elects, for reasons of conscience, morality, or ethics, not to participate is not required to participate under this part," it also says that a conscientiously objecting "health care provider" must "at a minimum, inform the individual that they do not participate in [the End of Life Options Act], document the individual's date of [suicide] request and provider's

notice to the individual of their objection to the medical record, and transfer the individual's relevant medical record upon request." *Id.* at §§ 443.14(e)(1), (2).

47.  Similarly, another provision of the law requires that, if a conscientiously objecting physician's patient transfers to a new health care professional, the objecting physician must provide the patient with their record, and upon request, timely transfer it to the patient's new physician "with documentation of the date of the individual's request for a prescription for aid-in-dying drug in the medical record, pursuant to law." *Id.* at § 443.14(e)(4).

48.  The originally introduced version of SB 380 required only *voluntary* "participation" in assisted suicide as defined by the statute, but defined that term to explicitly exclude:

> (1) diagnosing whether a patient has a terminal disease, informing the patient of the medical prognosis, or determining whether the patient has the capacity to make decisions; (2) providing information to a patient about the Act; and (3) providing a patient, upon request, with a referral to another health care provider for the purposes of participating in the activities authorized by the Act.

Senate Judiciary Committee Executive Summary on SB-380 at 10, CALIFORNIA LEGISLATIVE INFORMATION (April 16, 2021), https://bit.ly/3H1KbBj.

49.  The subsequent Senate Judiciary Committee analysis acknowledged that excluding those three sets of actions from the definition of "participating," and thus denying legal protection to physicians who refuse to engage in those actions, "required a physician who objects to the Act to carry out certain duties to affirmatively facilitate the ultimate provision of end-of-life services under the Act." *Id.* The analysis admitted that such a requirement "arguably did not strike the right

balance" and "raised constitutional questions with respect to freedom of speech and the free exercise of religion." *Id.*

50.   Yet the final, enacted version of SB 380 included new language to exclude the exact same three categories of actions from its definition of "participating." In the final version, the section of SB 380 that protects conscientious objectors defines "participate" by reference to a separate section's definition. CAL. HEALTH & SAFETY CODE §§ 443.14(e)(2), (3) (citing § 443.15(f)). That definition states:

> Participating, or entering into an agreement to participate, under this part" does not include doing, or entering into an agreement to do, any of the following:
> (A) Diagnosing whether a patient has a terminal disease, informing the patient of the medical prognosis, or determining whether a patient has the capacity to make decisions.
> (B) Providing information to a patient about this part.
> (C) Providing a patient, upon the patient's request, with a referral to another health care provider for the purposes of participating under this part.

*Id.* at § 445.15(f)(3).

51.   SB 380 thereby mandates that physicians engage in statutorily required steps to advance the patient toward assisted suicide, but defines "participate" so narrowly that engaging in these steps of actively facilitating assisted suicide does not fall within the statutory definition of "participating."

52.   The law further defines "terminal disease" to mean "an incurable and irreversible disease that has been medically confirmed and will, within reasonable medical judgment, result in death within six months." *Id.* at § 443.1(r).

53.   Under the law, an attending physician treating a patient's terminal illness "shall ensure the date of a [physician-assisted suicide] request is documented in an

individual's medical record," *Id.* at §§ 443.3(a), even if the attending physician chooses not to participate in assisted suicide. *Id.* § 443.14(e)(1)–(2).

54.  The law thus requires attending physicians of terminal patients to use their "reasonable medical judgment" to fulfill at least one of the requirements for assisted suicide.

55.  This list of exclusions in the final version of SB 380 amounts to requiring objecting physicians to "carry out certain duties to *affirmatively facilitate* the ultimate provision of end-of-life services under the Act." Committee Executive Summary on SB-380 at 10 (emphasis added).

56.  SB 380 leaves physicians who refuse to diagnose a terminal disease, inform a patient of his medical prognosis, determine decision-making capacity, inform a patient about California's End of Life Options Act, refer a patient to a physician who may be willing to participate in assisted suicide, document a patient's assisted-suicide request, or transfer a patient's file with his documented assisted-suicide request and other relevant information, open to "civil, criminal, administrative, disciplinary, employment, credentialing, professional discipline, contractual liability, or medical staff action, sanction, or penalty or other liability[.]" CAL. HEALTH & SAFETY CODE § 443.14(e)(3).

57.  The Senate Committee on Health's analysis of the originally introduced version of SB 380 included a "concern and amendment request," which stated, in relevant part:

> Critical to the California Medical Association's (CMA's) support of the original EOLA, is the absolute ability for physicians to choose whether or not to participate. This bill redefines "participation," including the

> requirement of informing and referring, which would severely threaten the autonomy of physicians, removing a true conscious objection and opt out.

Senate Judiciary Committee Executive Summary on SB-380 at 8-9.

58.  But SB 380, as enacted, directly excludes informing and referring from its definition of "participating"—and thus excludes refusal to inform or refer from its protections—just like the prior version of SB 380 that CMA objected to.

59.  The Senate Committee on Health's analysis of the originally introduced version also included an "oppose unless amended" statement from the California Hospital Association, which stated, in relevant part:

> current language in this bill would severely limit or eliminate EOLA[']s protections for health care facilities and providers that choose not to participate in physician-assisted death. Consequently, CHA currently opposes this bill unless it is amended to correct these issues. This bill would effectively require health care facilities and providers to facilitate patients' participation [in] EOLA despite their unwillingness—due to conscience, moral, ethical, or practical objections—to doing so. This bill would revise current law which broadly protects a person or entity from being required to participate under EOLA, to carve out specified activities from what constitutes such "participation," including providing information to a patient about EOLA and providing a referral to another health care provider for the purposes of participating in the activities authorized by EOLA.

Senate Judiciary Committee Executive Summary on SB-380 at 8.

60.  The final version of SB 380 carves out those exact specified activities from its definition of "participating," requiring physicians to provide information about and refer for assisted suicide, even if doing so violates a physician's conscience.

61.  The provision of SB 380 that protects physicians from criminal, civil, administrative, and professional liability for "participating" is not subject to the same

definition of "participating" as the provision that protects physicians who refuse to participate. *Compare* CAL. HEALTH & SAFETY CODE § 443.14(c) *with* § 443.14(e)(3).

62.   Further, another provision of SB 380 provides: "The fact that a health care provider participates under [California's physician-assisted laws] shall not be the sole basis for a complaint or report of unprofessional or dishonest conduct" in violation of California's Business and Professions Code, without a corresponding protection for physicians who *refuse* to participate in assisted suicide. CAL. HEALTH & SAFETY CODE § 443.15(g).

63.   In sum, the original End of Life Options Act provided broad protection for conscientiously objecting physicians, but SB 380 eliminates or limits that protection by requiring the objecting physician to:

   a.   Document the date of a patient's initial assisted-suicide request, which counts as the first of two required oral requests;

   b.   Transfer the records including that first oral request to a subsequent physician who may complete the assisted suicide;

   c.   Diagnose whether a patient has a terminal disease, inform the patient of the medical prognosis, and determine whether a patient has the capacity to make decisions, all of which are statutorily required steps toward assisted suicide;

   d.   Provide information to a patient about the End of Life Options Act;

   e.   Provide a requesting patient with a referral to another provider who may complete the assisted suicide.

*SB 380's Effect on the Plaintiffs*

64.  Because Dr. Cochrane evaluates and treats patients seeking hospice care on a daily basis, he is required to diagnose terminal diseases and assess life expectancy.

65.  In his role as a full-time hospice physician, Dr. Cochrane routinely serves as the attending physician for terminally ill patients who have been referred to hospice.

66.  Under SB 380, if one of his patients requests assisted suicide, Dr. Cochrane would have to document the request, provide information to the patient about California's End of Life Options Act, refer the patient to a doctor who may be willing to participate in assisted suicide, and transfer the patient's files with details about the assisted-suicide request to the willing doctor, even though this would be a violation of his sincerely held religious beliefs and a violation of his professional oath, ethics, and duties. *See id.* at §§ 443.14(e)(2), 443.14(e)(4), 443.15(f)(3).

67.  Similarly, under SB 380, if a terminally ill patient of any other California physician-member of CMDA requests assisted suicide, that physician would have to document the request, inform the patient about California's End of Life Options Act, refer the patient to a doctor who may be willing to participate in assisted suicide, and transfer the patient's files with details about the assisted-suicide request to the willing doctor. *See id.*

68.  Under SB 380, Dr. Cochrane's, or another CMDA member's, mandatory documentation of a patient's oral request for assisted suicide would count as one of the two required oral requests for assisted suicide and therefore would constitute a step toward providing the patient with life-ending drugs.

69.   Plaintiffs will suffer the loss of their constitutionally guaranteed rights of freedom of speech, free exercise of religion, due process, and equal protection unless SB 380 is enjoined.

70.   Additionally, Plaintiffs are suffering and will suffer a chilling effect on the exercise of their rights as a result of SB 380.

71.   SB 380 and its enforcement and threatened enforcement by Defendants are actions taken under of color of state law.

72.   Plaintiffs desire not to participate in assisted suicide in any way, but they fear penalization under SB 380 and action against their medical licenses if they do not.

73.   SB 380 is imposing and will continue to impose irreparable harm upon Plaintiffs' free exercise of religion and free speech activities unless it is declared illegal or unconstitutional and enjoined.

74.   Plaintiffs have no adequate remedy at law.

## FIRST CAUSE OF ACTION

### First Amendment Free Speech

75.   Plaintiffs repeat and reallege each of the foregoing allegations in paragraphs 1 through 74 of this Complaint.

76.   The First Amendment's Free Speech Clause protects California physicians', including CMDA members' and Dr. Cochrane's, rights to be free from content and viewpoint discrimination and to be free from laws that compel them to speak messages with which they disagree.

*Compelled Speech*

77.  SB 380 facially and as applied deprives CMDA members, including Dr. Cochrane, of their right not to speak the State's message on the subject of assisted suicide.

78.  SB 380 facially requires all California physicians, including CMDA members and Dr. Cochrane, to provide patients with information about assisted suicide and to refer patients for assisted suicide against their religious, ethical, and medical objections to doing so, and leaves them open to criminal, civil, administrative, and professional liability if they do not comply. *See* CAL. HEALTH & SAFETY CODE §§ 443.15(f)(3)(B)–(C), 443.14(e)(3), *Cobbs v. Grant*, 502 P.2d 1, 7–8 (Cal. 1972).

79.  SB 380 requires all California physicians, including CMDA members and Dr. Cochrane to diagnose terminal diseases, provide patients with medical prognoses, determine decision-making capacity, record assisted-suicide requests, refer to providers of assisted suicide, and transfer relevant files with that information to subsequent physicians who may use the information to provide assisted suicide, despite CMDA members' and Dr. Cochrane's religious, ethical, and medical objections to participating in any way in assisted suicide. CAL. HEALTH & SAFETY CODE at §§ 443.14(e)(2), 443.14(e)(4), 443.15(f)(3)(A).

80.  SB 380 facially requires all California physicians, including CMDA members and Dr. Cochrane, to speak Defendants' preferred messages about assisted suicide by informing patients about it, referring patients to providers who are willing to provide it, and recording and transferring patient requests and various findings

about the patient, which constitute necessary steps in the patient's process of obtaining assisted suicide. *Id.* at §§ 443.14(e)(2), 443.14(e)(4), 443.15(f)(3)(A)–(C).

***Content and Viewpoint Discrimination***

81.   SB 380 is facially content and viewpoint based because it fully protects from liability the speech and conduct of physicians who choose to participate in assisted suicide. But SB 380's liability protection excludes physicians, including CMDA members and Dr. Cochrane, who refuse to participate in assisted suicide in any way and will not refer for or provide information about assisted suicide.

82.   SB 380 is facially content and viewpoint based because it allows physicians not to participate in assisted suicide so long as they refer for and provide information about assisted suicide, and record and transfer patient requests for it. But SB 380 does not permit physicians objecting to assisted suicide to refrain from referring for it, providing information about it, and recording and transferring patient assisted-suicide requests.

***Overbreadth***

83.   These speech requirements are facially overbroad, requiring CMDA members and Dr. Cochrane, as well as third parties not before the Court, including all physicians in California, to speak the State's preferred message on assisted suicide in ways well beyond what is necessary to serve any state interest.

84.   SB 380 is not narrowly tailored to a compelling, significant, legitimate or even valid state interest.

85.   Defendants have not provided any sufficient justification for discriminating against conscientiously objecting physicians and coercing them to participate in

assisted suicide or speak the state's pro-assisted suicide message in the ways required by SB 380.

86.   CMDA members and Dr. Cochrane do not have an adequate remedy at law.

87.   Defendants are empowered to enforce California laws, regulations, and professional standards relating to the practice of medicine.

88.   CMDA and Dr. Cochrane accordingly seek declaratory and preliminary and permanent injunctive relief holding that SB 380 is invalid facially and as-applied, and restraining Defendants from taking actions to enforce the provisions of SB 380 that require health care professionals to inform about, participate in, and refer for assisted suicide or otherwise enforcing SB 380's discriminatory provisions in CAL. HEALTH & SAFETY CODE § 443.14 and § 443.15.

## SECOND CAUSE OF ACTION

### First Amendment Free Exercise

89.   Plaintiffs repeat and reallege each of the foregoing allegations in paragraphs 1 through 74 of this Complaint.

90.   The First Amendment of the United States Constitution protects California physicians', including CMDA members' and Dr. Cochrane's, rights to the free exercise of their religious beliefs.

91.   CMDA members and Dr. Cochrane are informed in their conscientious and ethical beliefs about assisted suicide by sincerely held Christian religious beliefs.

92.   SB 380 facially imposes a substantial burden on all religiously motivated California physicians who refuse to participate in assisted suicide, and as applied imposes a substantial burden on CMDA members' and Dr. Cochrane's religious

beliefs.

93.   It forces religiously objecting California physicians, including CMDA members and Dr. Cochrane, to choose between abandoning their livelihoods or obeying government commands that violate their religious conscience and compel them to speak and act in ways that contravene their religious faith.

94.   SB 380 facially and as applied targets religion by treating secular conduct better than comparable religious conduct—namely, it protects all physicians who participate in assisted suicide.

95.   But it targets religion and is not neutral and generally applicable because it excludes from any protection religious physicians who refuse to participate in assisted suicide in any way, including refusal to refer for or provide information about assisted suicide—which subjects SB 380 to strict scrutiny analysis under the Free Exercise Clause. *See Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021).

96.   SB 380 is not neutral and generally applicable because facially and as applied it treats some religious beliefs better than others. It protects physician religious beliefs prohibiting prescribing assisted suicide drugs so long as the physician's beliefs permit referral for and provision of information about assisted suicide, and recording and transferring patient assisted-suicide requests.

97.   SB 380 targets and does not protect physicians whose religious beliefs prohibit prescribing assisted suicide drugs, as well as referral for and provision of information about assisted suicide, and recording and transferring patient assisted-suicide requests.

98.   Facially, and as applied to CMDA members and Dr. Cochrane, SB 380

implicates religious liberty and multiple fundamental rights protected by the First Amendment to the U.S. Constitution, including the right to refrain from speaking and the right to be free from governmental content and viewpoint discrimination. As such, it infringes on "hybrid rights" in violation of the First Amendment and must be justified by satisfying a strict-scrutiny standard.

99.   Defendants cannot meet strict scrutiny by demonstrating both a compelling need for the imposition of assisted suicide participation mandates, and that other means less intrusive upon CMDA members' and Dr. Cochrane's beliefs are not available to Defendants.

100. Defendants have not provided any sufficient justification for requiring conscientiously objecting physicians to participate in and refer for assisted suicide in violation of their deeply held religious beliefs in the ways required by SB 380.

101. CMDA members and Dr. Cochrane have no adequate remedy at law.

102. Defendants are empowered to enforce California laws, regulations, and professional standards relating to the practice of medicine.

103. CMDA and Dr. Cochrane accordingly seek declaratory and preliminary and permanent injunctive relief holding that SB 380 is invalid, facially and as applied, and restraining Defendants from taking actions to enforce the provisions of SB 380 that require health care professionals to discuss, participate in, and refer for assisted suicide, or otherwise enforcing SB 380's discriminatory provisions in CAL. HEALTH & SAFETY CODE § 443.14 and § 443.15.

**THIRD CAUSE OF ACTION**

**Fourteenth Amendment Due Process Claim**

104. Plaintiffs repeat and reallege each of the foregoing allegations in paragraphs 1 through 74 of this Complaint.

105. The Due Process Clause of the Fourteenth Amendment guarantees California physicians, including CMDA's members, the right to due process of law, which includes the right to be free from vague guidelines that no reasonable person in their position could understand.

106. The terms and provisions of SB 380 are facially unconstitutionally vague and ambiguous, and subject CMDA members including Dr. Cochrane to civil, criminal, and professional disciplinary action resulting in the potential deprivation of their livelihoods.

107. The terms and provisions of SB 380 are facially vague and ambiguous, in that, no reasonable health care professional in CMDA members' and Dr. Cochrane's position could understand the meaning of the terms "terminal disease" and "participation," as defined in the statute.

108. The phrase, "diagnosing whether a patient has a terminal disease" as used in the statute in conjunction with the term "terminal disease" as defined in the statute, is vague and ambiguous because no reasonable health care professional in CMDA members' and Dr. Cochrane's position could know whether it means a disease that will "result in death within six months" with treatment or without treatment. *Id.* at § 443.1(r). In fact, a national study of live discharges from hospices in 2010 found that, although there were variations based on geography

and based on the type of hospice and how long it had been operating, about 1 in 5 hospice patients were discharged alive. Joan M. Teno, et al., *A National Study of Live Discharges from Hospice*, JOURNAL OF PALLIATIVE MEDICINE (October 2014), https://bit.ly/3LP57z1.

109. The phrase, "diagnosing whether a patient has a terminal disease" as used in the statute in conjunction with the term "terminal disease" as defined in the statute is also vague and ambiguous because no reasonable health care professional in CMDA members' and Dr. Cochrane's position could know whether a disease is likely to "result in death within six months" to any degree of medical certainty. *Id.*

110. The term "participating," as used and defined in the statute, is also vague and ambiguous because no reasonable health care professional in CMDA's members' position could know what "participating" includes and does not include. CAL. HEALTH & SAFETY CODE § 443.14(e); § 443.15(f) (2)-(3).

111. Similarly, no reasonable health care professional in CMDA members' and Dr. Cochrane's position could understand the meaning of the phrase "[p]roviding information to a patient about this part" as used in the statute.

112. It is completely unclear how much, and what type of, information a physician must provide to patients under the statute.

113. CMDA members and Dr. Cochrane have no adequate remedy at law.

114. Defendants are empowered to enforce California laws, regulations, and professional standards relating to the practice of medicine.

115. CMDA and Dr. Cochrane accordingly seek declaratory and preliminary and permanent injunctive relief holding that SB 380 is invalid facially and as applied,

24

and restraining Defendants from taking actions to enforce the provisions of SB 380 that require health care professionals to discuss, participate in, and refer for assisted suicide.

**FOURTH CAUSE OF ACTION**

**<u>Fourteenth Amendment Equal Protection Claim</u>**

116. Plaintiffs repeat and reallege each of the foregoing allegations in paragraphs 1 through 74 of this Complaint.

117. The Equal Protection Clause of the Fourteenth Amendment guarantees California physicians, including CMDA's members and Dr. Cochrane, equal protection of the laws.

118. SB 380 facially and intentionally discriminates between physicians who are willing to participate in assisted suicide and similarly situated physicians who are not willing to participate in assisted suicide.

119. SB 380 facially discriminates between physicians unwilling to participate in assisted suicide but willing to refer for and provide information about it (as well as recording and transferring patient assisted-suicide requests), and  similarly situated physicians unwilling to participate in assisted suicide or refer for and provide information about it (as well as recording and transferring patient assisted-suicide requests).

120. SB 380 protects from criminal, civil, administrative, and professional liability California physicians who participate in assisted suicide. CAL. HEALTH & SAFETY CODE § 443.14(c).

121. But its provision protecting from criminal, civil, administrative, and professional liability does not include California physicians who refuse to participate in assisted suicide by diagnosing terminal illness, informing the patient of the illness, assessing the patient's capacity, informing the patient about assisted suicide, documenting a patient's request for assisted suicide, transferring a requesting patient's file, or referring the patient to a physician who may provide assisted suicide. CAL. HEALTH & SAFETY CODE §§ 443.14(e)(3), 443.15(f)(3).

122. SB 380 also states: "The fact that a health care provider participates under [California's assisted suicide laws] shall not be the sole basis for a complaint or report of unprofessional or dishonest conduct" in violation of California's Business and Professions Code, without a corresponding protection for physicians who *refuse* to participate in assisted suicide. CAL. HEALTH & SAFETY CODE § 443.15(g)

123. Facially, and as applied to CMDA members, including Dr. Cochrane, this intentionally treats CMDA members less favorably than similarly situated participating physicians and non-participating physicians who do not object to providing information about or referring for assisted suicide, or recording and transferring patient assisted-suicide requests. And it does so based on CMDA members' speech content and deeply held Christian religious beliefs.

124. Defendants have not provided any sufficient justification for singling out conscientiously objecting physicians, including CMDA members and Dr. Cochrane, for potential liability regarding their refusal to participate in assisted suicide.

125. CMDA members and Dr. Cochrane have no adequate remedy at law.

1     126. Defendants are empowered to enforce California laws, regulations, and
2 professional standards relating to the practice of medicine.

3     127. CMDA and Dr. Cochrane accordingly seek declaratory and preliminary and
4 permanent injunctive relief holding that SB 380 is invalid, facially and as applied,
5 and restraining Defendants from taking actions to enforce the provisions of SB 380
6 that require health care professionals to discuss, participate in, and refer for assisted
7 suicide, or enforcing SB 380's discriminatory provisions in CAL. HEALTH & SAFETY
8 CODE § 443.14 and § 443.15.

**PRAYER FOR RELIEF**

WHEREFORE, CMDA and Dr. Cochrane respectfully request that this Court enter judgment against Defendants and provide CMDA and Dr. Cochrane with the following relief:

(A)    Enter a declaratory judgment that SB 380, facially and as applied, is content based and viewpoint based, is vague and ambiguous, broadly compels speech, infringes California physicians' free exercise rights, and violates the guarantees of due process and equal protection, in violation of the First and Fourteenth Amendments to the United States Constitution, as pled above.

(B)    Enter a declaratory judgment that SB 380 violates the First and Fourteenth Amendments to the United States Constitution as applied to CMDA members, including Dr. Cochrane.

(C)    Enter preliminary and permanent injunctive relief prohibiting Defendants, or anyone acting in concert with them, from applying the provisions of SB 380 that require health care professionals to discuss, participate in, and refer for assisted suicide to initiate any civil, criminal, or disciplinary proceedings against CMDA members, including Dr. Cochrane, or facially against anyone, and from enforcing SB 380's discriminatory provisions in CAL. HEALTH & SAFETY CODE § 443.14 and § 443.15.

(D)    Award Plaintiff attorneys' fees and costs under 42 U.S.C. § 1988 and the Court's equitable powers.

(E)    Award all other relief as the Court may deem just and proper.

Respectfully submitted this 22nd day of February, 2022.

By: */s/ Catherine W. Short*

CATHERINE SHORT CA Bar No.117442
kshort@lldf.org
LIFE LEGAL DEFENSE FOUNDATION
PO Box 1313
OJAI, CA 93024
(707) 337-6880

DENISE M. HARLE, GA BAR NO. 176758
dharle@adflegal.org
ALLIANCE DEFENDING FREEDOM
1000 HURRICANE SHOALS ROAD NE, SUITE D-1100
LAWRENCEVILLE, GEORGIA 30043
(770) 339-0774
(770) 339-6744 FAX

KEVIN H. THERIOT, AZ Bar No. 30446[*]
ktheriot@adflegal.org
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 Fax

*Attorneys for Plaintiffs*
*\* Application for Admission Pro Hac Vice forthcoming*

29

**VERIFICATION OF COMPLAINT**

   I, Jeffrey Barrows, D.O., a citizen of the United States and a resident of the State of Tennessee, as Senior Vice President of Bioethics and Public Policy for CMDA, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct.

   Executed this <u>22nd</u> day of February, 2022, at Bristol, Tennessee.


          <u>*s/ Jeffrey Barrow, D.O.*</u>
          Jeffrey Barrows, D.O.


**VERIFICATION OF COMPLAINT**

   I, Leslee Cochrane, M.D., a citizen of the United States and a resident of the State of California, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct.


   Executed this <u>22nd</u> day of February, 2022, at Murrieta, California.


          <u>*s/ Leslee Cochrane, M.D.*</u>
          Leslee Cochrane, M.D.