Rob Bonta
Attorney General of California
Darrell W. Spence, State Bar No. 248011
Supervising Deputy Attorney General
Kevin L. Quade, State Bar No. 285197
Deputy Attorney General
State Bar No. 285197
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone:  (916) 210-7693
  Fax:  (916) 324-5567
  E-mail:  Kevin.Quade@doj.ca.gov
*Attorneys for Defendants Rob Bonta, Attorney
General of the State of California, and Tomas
Aragon, in his official capacity as the Director of
the California Department of Public Health*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS and LESLEE COCHRANE, M.D.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California; TOMAS J. ARAGON, M.D., DR. P.H., in his official capacity as the Director of the California Department of Public Health and as the State Public Health Officer; and KRISTINA D. LAWSON, J.D., RANDY W. HAWKINS, M.D., LAURIE ROSE LUBIANO, J.D., RYAN BROOKS, MICHELLE BHOLAT, M.D., VELING TSAI, M.D., , JAMES M. HEALZER, M.D., ASIF MAHMOOD, M.D., DAVID RYU, RICHARD E. THORP, M.D., ESERICK WATKINS, AND NICOLE JEONG, J.D., in their official capacities as members of the Medical Board of California,**<br><br>Defendants. | Case No. 5:22-cv-00335-FLA-GJS<br><br>**DEFENDANTS ATTORNEY GENERAL OF CALIFORNIA AND DIRECTOR OF THE CALIFORNIA DEPARTMENT OF PUBLIC HEALTH'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**<br><br>Date:           September 16, 2022<br>Time:           1:30 p.m.<br>Courtroom:   6B<br>Judge:          The Honorable Fernando L. Aenlle-Rocha<br>Trial Date:    April 23, 2024<br>Action Filed: February 22, 2022 |

# TABLE OF CONTENTS

**Page**

Introduction..................................................................................................1

Argument .....................................................................................................1

    I.     Section 443.14(e)(2) Enumerates the Only Affirmative
          Requirements for Non-Participating Providers....................................1

    II.    Plaintiffs Have Not Established Article III Standing ...........................2

    III.   Plaintiffs' Claims Are Not Ripe for Adjudication ...............................5

    IV.   Plaintiffs Cannot State a Viable Free Exercise of Religion Claim.......6

    V.    Plaintiffs Cannot State a Viable Free Speech Claim ........................ 10

    VI.   Plaintiffs Cannot State a Viable Due Process Claim ........................ 12

    VII.  Plaintiffs Cannot State a Viable Equal Protection Claim .................. 13

Conclusion ................................................................................................ 14

# TABLE OF AUTHORITIES

**Page**

CASES

*Arizona v. Yellen*
34 F.4th 841 (9th Cir. 2022) ................................................................. 4

*Armour v. City of Indianapolis*
556 U.S. 673 (2012) ........................................................................... 14

*Burwell v. Hobby Lobby Stores*
573 U.S. 682 (2014) ............................................................................. 6

*Church of the Lukumi Babalu Aye. Inc. v. City of Hialeah*
508 U.S. 520 (1993) .......................................................................... 7, 8

*City of Boerne v. Flores*
521 U.S. 507 (1997) ............................................................................. 6

*Cox v. Louisiana*
379 U.S. 559 (1965) ........................................................................... 12

*Dobbs v. Jackson Women's Health*
142 S. Ct. 2228 (2022) ................................................................... 11, 12

*Emp. Div., Dep't of Hum. Res. of Or. v. Smith*
494 U.S. 872 (1990) ............................................................... 6, 7, 8, 10

*Fulton v. City of Philadelphia*
141 S. Ct. 1868 (2021) ......................................................................... 7

*Giboney v. Empire Storage & Ice Co.*
336 U.S. 490 (1949) ........................................................................... 12

*Guam v. Guerrero*
290 F.3d 1210 (9th Cir. 2002) .............................................................. 6

*Hedges v. Obama*
724 F.3d 170, 201-04 (2d Cir. 2013) ..................................................... 4

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*
565 U.S. 171 (2012) ............................................................................. 9

1
2

# TABLE OF AUTHORITIES
## (continued)

Page

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Kennedy v. Bremerton Sch. Dist.*
   142 S. Ct. 2407 (2022) .............................................................. 7

*LSO, Ltd. v. Stroh*
   205 F.3d 1146 (9th Cir. 2000) ................................................. 3

*Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*
   138 S. Ct. 1719 (2018) ............................................................ 10

*Nat'l Inst. of Fam. and Life Advocs. v. Becerra*
   138 S. Ct. 2361 (2018) ....................................................... 11, 12

*People v. Miracle*
   6 Cal. 5th 318 (2018) ............................................................... 2

*Planned Parenthood of Se. Pa. v. Casey*
   505 U.S. 833 (1992) ........................................................... 11, 12

*Rattlesnake Coal. v. U.S. E.P.A.*
   509 F.3d 1095 (9th Cir. 2007) ................................................. 2

*Roy v. Barr*
   960 F.3d 1175 (9th Cir. 2020) ............................................... 13

*Rumsfeld v. F. for Acad. & and Institutional Rts., Inc.*
   547 U.S. 47 (2006) ................................................................. 12

*San Jose Christian College v. City of Morgan Hill*
   360 F.3d 1024 (9th Cir. 2004) ............................................... 10

*Sorrell v. IMS Health Inc.*
   564 U.S. 552 (2011) ............................................................... 12

*Stormans, Inc. v. Selecky*
   586 F.3d 1109 (9th Cir. 2009) .............................................. 5, 8

*Stravrianoudakis v. United States Dep't of Fish & Wildlife*
   435 F. Supp. 3d 1063 (E.D. Cal. 2020) .................................. 3

*Susan B. Anthony (SBA) List v. Driehaus*
   573 U.S. 149 (2014) ................................................................. 4

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Thomas v. Anchorage Equal Rights Comm'n*
220 F.3d 1134 (9th Cir. 2000).................................................................3, 4, 5, 6

*Thomas v. Review Bd. of Indiana Emp't Sec. Div.*
450 U.S. 707 (1981) ......................................................................................10

*Twitter, Inc. v. Paxton*
26 F.4th 1119 (9th Cir. 2022)..........................................................................5, 6

*United States v. X-Citement Video, Inc.*
513 U.S. 64 (1994) .............................................................................................2

**STATUTES**

California Business and Professions Code
§ 2225.5 (enacted 1993) .................................................................................11
§ 2266 (enacted 1996) ....................................................................................11

**OTHER AUTHORITIES**

45 Code of Federal Regulations
§ 164.524 .......................................................................................................11

Senate Bill No. 308
§ 443.14(e)........................................................................................................1
§ 443.14(e)(2)............................................................................................*passim*
§ 443.14(e)(3)...........................................................................................12, 13
§ 443.15(f).......................................................................................................12
§ 443.15(f).......................................................................................................13
§ 443.15(f)(2).................................................................................................13
§ 443.15(f)(3).........................................................................................2, 12, 13

iv

1
2

**INTRODUCTION**

3    Plaintiffs' Opposition falls short on all issues raised by Defendants' Motion to

4    Dismiss.  Initially, Plaintiffs cannot overcome the dispositive procedural defects

5    that require dismissal of this case, namely, the absence of Article III standing and

6    ripeness.  Moreover, they have not shown that any of their constitutional challenges

7    to SB 380 have merit.  This Court lacks jurisdiction over this matter and Plaintiffs

8    fail to state plausible constitutional claims.  Accordingly, dismissal with prejudice

9    is warranted.

10                                   **ARGUMENT**

11   **I.    SECTION 443.14(E)(2) ENUMERATES THE ONLY AFFIRMATIVE
            REQUIREMENTS FOR NON-PARTICIPATING PROVIDERS**
12

13   As explained in Defendants' Motion, ordinary principles of statutory

14   construction preclude Plaintiffs' argument that the End of Life Option Act (EOLOA

15   or Act) requires non-participating providers to do more than § 443.14(e)(2)'s list of

16   affirmative acts.  *See* Dkt. 71-1 at 15-18.  This Court need not go beyond the Act's

17   plain language in § 443.14(e)(2), which includes a complete list of the acts that

18   non-participating providers "shall, at a minimum," perform.  This language

19   provides the most direct and concrete evidence of the conduct that is required.  And

20   the conduct alleged by Plaintiffs is not on that affirmative list.

21   Still, even if the Court were to find that some ambiguity exists in the statutory

22   language, the legislative history confirms Defendants' construction.  The initial

23   draft of SB 380 introduced in February 2021 explicitly required non-participating

24   providers to diagnose terminal illnesses, assess mental capacity, provide

25   information about the EOLOA, and refer patients for aid in dying in § 443.14(e).

26   Request for Judicial Notice in Support of Motion to Dismiss (RJN), Ex. 7, Sen. Bill

27   No. 380 as introduced Feb. 10, 2021, pp. 14-15.  However, this proposed language

28   was removed from § 443.14(e) when the Senate amended the bill in April 2021.

1    RJN, Ex. 8, Sen. Bill No. 380 as amended Apr. 5, 2021, pp. 13-14.  Contrary to

2    Plaintiffs' interpretation, the Senate Judiciary Committee Analysis explained that

3    the language was deleted specifically to ensure that non-participating providers

4    would <u>not</u> be required to engage in the conduct described in the stricken language.

5    *See* RJN, Ex. 2, Sen. Judiciary Comm. Analysis, pp. 10-12.

6         Plaintiffs dispute the value of this legislative history, arguing that the Judiciary

7    Committee's report is "ambiguous and incomplete," and fails to indicate which

8    version of the bill it was addressing.  Dkt. 98 at 14-15.  However, the report

9    explicitly referred to the April 5, 2021 amended version of the bill.  *See* RJN, Ex. 2,

10   Sen. Judiciary Comm. Analysis, p. 1.  Moreover, the report unequivocally

11   contradicts Plaintiffs' reading of the EOLOA, detailing the Legislature's concern

12   that the deleted language would have opened up providers to liability for failing to

13   provide information or refer patients, and explaining that the amendment was

14   intended to remove any such requirements from the Act.  *Id.* at pp. 10-12.  In the

15   face of this legislative history, Plaintiffs' suggestion that the committee somehow

16   "failed to account for" the additional requirements they read from § 443.15(f)(3) is

17   implausible, as any affirmative obligations beyond § 443.14(e)(2) were removed.

18   Plaintiffs' contrary reading of the Act thus conflicts with the statute's plain

19   language and the legislative history.  Such a reading would also violate a

20   fundamental cannon of construction that statutes should be construed in a manner

21   that avoids constitutional questions.  *See United States v. X-Citement Video, Inc.*,

22   513 U.S. 64, 78 (1994); *People v. Miracle*, 6 Cal. 5th 318, 339 (2018).

23   **II.   PLAINTIFFS HAVE NOT ESTABLISHED ARTICLE III STANDING**

24        Plaintiffs' assertion of standing is based solely on allegations in the Complaint

25   that Plaintiffs intend to violate SB 380 in the future, followed by legal argument

26   that a credible threat of enforcement should be presumed.  Dkt. 98 at 16-17.  This

27   showing fails to satisfy their burden to establish standing.  *Rattlesnake Coal. v. U.S.*

28

1  *E.P.A.*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007) ("[T]he party asserting subject

2  matter jurisdiction has the burden of proving its existence.").

3     In attempting to support their purported intent to violate SB 380, Plaintiffs

4  aver that they "will not comply" with SB 380's requirements "because of their

5  religious and moral convictions." Dkt. 98 at 16. However, "something more than a

6  hypothetical intent to violate the law [is required], [and] plaintiffs must give details

7  about their future [conduct] such as 'when, to whom, where, or under what

8  circumstances' of the plan to violate the law." *Stravrianoudakis v. United States*

9  *Dep't of Fish & Wildlife*, 435 F. Supp. 3d 1063, 1085 (E.D. Cal. 2020) (quoting

10 *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)).

11 Plaintiffs offer no such details. Most tellingly, they fail to allege the predicate facts

12 necessary for them to commit a violation of SB 380 in the first place—that

13 terminally ill patients have requested their assistance for aid-in-dying and they have

14 refused to act in accordance with the EOLOA. Indeed, the fact that Plaintiff

15 Cochrane works at a non-participating facility renders it exceedingly unlikely that

16 he will encounter an aid-in-dying request that he must refuse. Absent such

17 predicate facts, Plaintiffs' pleading amounts to the mere possibility that they may

18 encounter a patient requesting aid-in-dying assistance at some point in the future

19 and that they would refuse to comply with SB 380's limited requirements. Such

20 speculation is insufficient to establish standing. *Thomas*, 220 F.3d at 1140

21 ("'[S]ome day' intentions—without . . . specification of when the some day will

22 be—do not support a finding of the 'actual or imminent' injury that our cases

23 require.").

24    Plaintiffs' assertion of a credible threat of enforcement is likewise

25 unsubstantiated. They submit that because SB 380 was recently enacted and

26 Defendants have not disavowed enforcement, a credible threat necessarily exists.

27 Dkt. 98 at 18-19. But these are just two factors in the analysis and are hardly

28 decisive. *See LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) ("[w]e

consider a variety of factors" and "enforcement history alone is not dispositive").
Most pertinent, and as discussed, Plaintiffs have not shown that they have or will
act in a manner that could subject them to enforcement.  Indeed, in every case
Plaintiffs cite finding a threat of enforcement, there was clear evidence of an
existing course of conduct proscribed by the challenged law.  *See* Dkt. 98 at 16-18
(citing, *e.g., Susan B. Anthony (SBA) List v. Driehaus*, 573 U.S. 149, 161-62, 164
(2014) (organizations made statements that violated the challenged statute, leading
to prior enforcement proceedings); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484
U.S. 383, 390-91 (1988) (almost half of booksellers' inventory was proscribed by
the challenged statute); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 (9th Cir.
2013) (pastor sheltered and transported unauthorized aliens, constituting conduct
prohibited by the challenged statute)).[1]

Plaintiffs here, by contrast, merely allege that they provide care and treatment
to terminally ill patients on a daily basis.  But they have not identified a single
instance in which they have been asked by a patient to provide aid-in-dying, which
they refused—the scenario affected by SB 380.  Had Plaintiff Cochrane, for
instance, ever encountered this scenario in his practice, he would have undoubtedly
alleged it.  This pleading deficiency, together with the uncontroverted fact that no
California licensed physician has been disciplined for violations arising under the
EOLOA since its inception, *see* Declaration of Jenna Jones in support of Motion to
Dismiss, ¶¶ 6-7, overwhelmingly demonstrates the speculative nature of Plaintiffs'
claimed enforcement threat.[2]

[1] Plaintiffs also cite *Hedges v. Obama*, but that case actually supports
Defendants' position because, as in this case, the connection between the plaintiffs'
conduct and the challenged statute was wholly absent.  724 F.3d 170, 201-04 (2d
Cir. 2013) (denying standing because plaintiffs lacked examples, either personally
or of similarly situated individuals, of military detention intended or threatened by
the government, such that enforcement against them was not even remotely likely).
[2] Plaintiffs' attempt to minimize the Ninth Circuit's precedent in *Thomas* is
unavailing.  *See* Dkt. 98 at 17 n. 5.  *Thomas* remains good law after the Supreme
Court's 2014 decision in *SBA List*.  *See, e.g., Arizona v. Yellen*, 34 F.4th 841, 850
(9th Cir. 2022) (applying *Thomas* to evaluate the genuineness of plaintiff's claimed

## III. PLAINTIFFS' CLAIMS ARE NOT RIPE FOR ADJUDICATION

Plaintiffs' claims similarly should be dismissed for lack of prudential ripeness.[3] Plaintiffs' first contend that their constitutional claims are purely legal and, thus, necessarily ripe for determination. Dkt. 98 at 20. However, their claims are premised on alleged threats of disciplinary enforcement that are inherently amorphous and may easily raise many "incomplete hypotheticals" and "open factual questions." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (citing *Thomas*, 220 F.3d at 1142 n.8). For example, there is no suggestion that Plaintiffs have actually encountered and refused a patient's request for aid-in-dying, and, if this has occurred, which acts in § 443.14(e)(2) they refused to perform. Likewise, it is not clear whether Plaintiffs can or would comply with some of the non-participation requirements. Plaintiffs' claims plainly rest upon hypothetical situations involving hypothetical providers and hypothetical patients, which necessarily render the case unfit for review. *Thomas*, 220 F.3d at 1141-42 (declining jurisdiction on ripeness grounds, explaining "the landlords ask us to declare Alaska laws unconstitutional, in the absence of any identifiable tenants and with no concrete factual scenario that demonstrates how the laws, as applied, infringe their constitutional rights").

Regarding hardship, Plaintiffs' only contention is that they risk disciplinary proceedings. Dkt. 98 at 19-20. But "the absence of any real or imminent threat of enforcement, particularly criminal enforcement, seriously undermines any claim of hardship." *Thomas*, 220 F.3d at 1142. On the other hand, Plaintiffs fail to meaningfully address the hardship to Defendants associated with defending SB

---

threat of enforcement for standing purposes). Moreover, *Thomas* squarely rejected the type of contingent threats proffered by Plaintiffs in this case, emphasizing that such a threat, when "based on a future violation—which may never occur—is beyond speculation." 220 F.3d at 1140.

[3] Having failed to establish the requisite injury-in-fact for standing, it follows that Plaintiffs also cannot satisfy their jurisdictional burden of demonstrating this case is constitutionally ripe for adjudication. *Twitter, Inc. v. Paxton*, 26 F.4th 1119, 1123 (9th Cir. 2022) ("[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry").

1   380's amendments to the EOLOA in an abstract, hypothetical posture, as well as

2   the deprivation of the State's ability to determine—based on real-world

3   circumstances—how SB 380 applies to its licensed providers in the first instance.

4   This demonstrably one-sided balance of hardships favors dismissal on ripeness

5   grounds. *See Thomas*, 220 F.3d at 1142 ("by being forced to defend the housing

6   laws in a vacuum and in the absence of any particular victims of discrimination, the

7   State and the City would suffer hardship were we to adjudicate this case now"); *see

8   also Twitter*, 26 F.4th at 1125 (declining to determine the constitutionality of a

9   state's law in a "hypothetical situation" before the state has "even decided whether

10  its law applies").

## IV. PLAINTIFFS CANNOT STATE A VIABLE FREE EXERCISE OF RELIGION CLAIM

13      In arguing that SB 380 unconstitutionally burdens their religious exercise by

14  "requiring them to facilitate assisted suicide," Plaintiffs suggest that burden on

15  religious exercise alone, without further analysis, establishes a violation of the First

16  Amendment. *See* Dkt. 98 at 21 (citing *Burwell v. Hobby Lobby Stores*, 573 U.S.

17  682 (2014)).[4]  However, the Supreme Court has long held that incidental burdens

18  on religious exercise are constitutionally permissible, so long as the burdening law

19  is religiously neutral and generally applicable.  Dkt. 71-1 at 27; *see Emp. Div.,*

20  *Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 878-82 (1990).

21      Ignoring this precedent, Plaintiffs argue that *Smith* should nonetheless be

22  overruled, stating that four Justices of the Supreme Court have previously called for

23  *Smith* to be reexamined.  Dkt. 98 at 24 n.8 (citing *Kennedy v. Bremerton Sch. Dist.*,

24  139 S. Ct. 634, 637 (2019) (Alito, J., statement respecting denial of certiorari)).

25

26      [4] *Burwell* has no application here.  That case concerned a challenge brought
    under the Religious Freedom Restoration Act of 1993 (RFRA).  *See Burwell*, 573
27  U.S. at 688.  RFRA provides a level of protection for religious exercise beyond that
    which the First Amendment requires, but is not applicable to the States.  *Guam v.*
    *Guerrero*, 290 F.3d 1210, 1218 (9th Cir. 2002); *see City of Boerne v. Flores*, 521
28  U.S. 507, 532 (1997).

1  Setting aside that this Court has no power to overrule or refuse to follow *Smith*,

2  Plaintiffs neglect to mention that the Supreme Court was recently presented with an

3  opportunity to reexamine *Smith* and a six-Justice majority declined to do so.  *See*

4  *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876-77 (2021); *id.* at 1882-83

5  (Barrett, J., concurring); *see also Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407,

6  2421-23 (2022) (applying *Smith* as first step in free exercise analysis).  In any

7  event, unless and until the Supreme Court revisits *Smith*, it remains binding

8  precedent.

9      Plaintiffs' contentions under the well-established analysis for free exercise

10  claims fare no better.  Dkt. 98 at 21-25.  Plaintiffs cite to *Church of the Lukumi*

11  *Babalu Aye. Inc. v. City of Hialeah*, 508 U.S. 520, 532-40 (1993), to argue that SB

12  380's amendments are neither neutral nor generally applicable because the

13  amendments (1) were gerrymandered to single out religious conduct for disfavored

14  treatment, and (2) apply differential treatment among religions.  Both arguments are

15  demonstrably false.  First, nothing in the plain text of the EOLOA or the legislative

16  history concerning SB 380's changes gives the slightest indication of intent to

17  disfavor or discriminate against religious exercise.  To the contrary, the Legislature

18  placed respect and deference for religious exercise at the forefront of its

19  considerations.  Indeed, the initial version of SB 380 was revised out of concern

20  that the bill "arguably did not strike the right balance" between the provision of

21  unobstructed aid-in-dying services and respect for the sincerely-held beliefs of

22  objecting providers.  RJN, Ex. 2, Sen. Judiciary Comm. Analysis, p. 10.  In striking

23  the appropriate balance, the Legislature determined that non-participating

24  providers, including those who object on religious grounds, need not substantively

25  participate in the aid-in-dying process, but must take three nominal steps—which

26  are fundamental medical practices—to ensure that terminally ill patients are not

27  obstructed from seeking such aid if desired.

28

1    Second, Plaintiffs point to protections for providers who comply with the
2    Act's provisions and argue that the absence of similar protections for non-
3    participators who refuse to comply with the minimal requirements of § 443.14(e)(2)
4    constitutes impermissible favoring of secular conduct.  Dkt. 98 at 22.  However,
5    this comparison is faulty.  An ostensibly neutral law constitutes a religious
6    gerrymander and implies discrimination only where the law prohibits religious
7    conduct but exempts other comparable secular conduct from prohibition.  *Lukumi*,
8    508 U.S. at 535-37.  Here, however, the conduct of providers who comply with the
9    Act's provisions (participators and non-participators alike) is not comparable to the
10   conduct of providers who fail to comply.  In fact, these categories of conduct are
11   fundamentally different with respect to the purpose of the law because the former
12   facilitates the intended operation of the Act, while the latter does not.  Moreover,
13   the EOLOA does not treat secular refusals more favorably than religious refusals.
14   As explained, although providers can decline to participate in the EOLOA for any
15   reason, all non-participators, *whether they object on secular or religious grounds*,
16   must comply with § 443.14(e)(2)'s requirements.  Thus, consistent with *Lukumi*,
17   the Act does not draw lines around or differentiate comparable secular and religious
18   conduct.

19   Third, the Act does not, as Plaintiffs assert, impermissibly discriminate against
20   differing religious views.  *See* Dkt. 98 at 24 (referring to the immunity received by
21   religious providers who are willing to comply with § 443.14(e)(2)).  Such an
22   argument could be made against any law that purportedly burdens some person's
23   religious exercise.  That some religious providers object while others comply does
24   not undermine the Act's neutrality or establish religious discrimination.  The
25   Supreme Court's religious liberty jurisprudence has, for decades, explicitly rejected
26   Plaintiffs' premise that people of faith can individually tailor their compliance with
27   neutral secular law in accordance with their religious convictions.  *Smith*, 494 U.S.
28   at 878-82, 888; *accord Stormans*, 586 F.3d at 1128.

1    Lastly, Plaintiffs' contention that SB 380 constitutes impermissible religious

2    targeting by infringing on more religious practice than necessary to achieve its

3    purpose lacks merit.  Dkt. 98 at 23.  Specifically, Plaintiffs argue that since non-

4    participation by religious providers was not deemed problematic under the earlier

5    version of the EOLOA, the "narrow[ing of] protections for religious objectors" is

6    evidence of intentional discrimination.  *Id.*  But this argument flows from the false

7    premise that SB 380's amendments were aimed at religion.  To the extent

8    § 443.14(e)(2)'s requirements for non-participators are viewed as a "narrowing" of

9    immunity, that narrowing explicitly applies to *all objectors*, not just religious

10   objectors.  The fact that SB 380's legislative history did not specify a problem with

11   religious non-compliance is thus immaterial because the general problem of delay

12   in the process of obtaining aid-in-dying medication, for which the Legislature

13   crafted a generally applicable and religiously neutral remedy, was well

14   documented.  *See* RJN, Ex. 1, Sen. Health Comm. Analysis, pp. 5-6, 7; Ex. 3,

15   Assem. Judiciary Comm. Analysis, p. 1; Ex. 4, Assem. Floor Analysis, p. 2.

16   Plaintiffs' alternative argument, that SB 380's changes to the EOLOA (even if

17   neutral and generally applicable) are nevertheless unconstitutional because they

18   violate rights of conscience "deeply rooted" in the Religion Clauses, also fails.

19   Dkt. 98 at 24-25.  This argument flows from *Hosanna-Tabor Evangelical Lutheran*

20   *Church & Sch. v. EEOC*, 565 U.S. 171, 190 (2012), where the Supreme Court

21   recognized an exception to neutral and generally applicable prohibitions on

22   employment discrimination for the hiring of ministers by religious employers.  But

23   *Hosanna-Tabor*'s uniquely narrow and clergy-centric departure from the ordinary

24   free exercise analysis has no application here, where Plaintiffs are physicians

25   engaged in the regular practice of medicine.  *See* Dkt. 1 ¶¶ 7-10.  They do not allege

26   to be members of the clergy or to have any special professional role in proselytizing

27   to others on behalf of their employer.  Though Plaintiffs hold sincere religious

28   beliefs that allegedly conflict with the EOLOA's non-participation requirements,

this is the case in every free exercise challenge to a neutral and generally applicable law.  Plaintiffs' expansion of *Hosanna-Tabor*'s holding to include any instance where a neutral law incidentally burdens a value "deeply rooted" in religion, swallows the well-established *Smith* free exercise analysis and should be rejected. *See Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1727 (2018) (distinguishing "confined" exception to anti-discrimination laws for clergy in context of same-sex marriage from claims made by other service providers based on religious beliefs).[5]

Finally, Plaintiffs argue that this case concerns a "hybrid" situation, where application of SB 380's neutral and generally applicable requirements is constitutionally barred because those mandates burden not only religious exercise, but also freedom of speech.  Dkt. 98 at 25 (citing *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 759 (8th Cir. 2019)).  The Ninth Circuit has held, however, that such "hybrid" claims require that a free exercise plaintiff make out a "colorable claim" that a companion right has been violated, meaning a showing of "fair probability or a likelihood" of success on the companion claim.  *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1032 (9th Cir. 2004).  As explained in the Motion and below, Plaintiffs have not established a "colorable" claim that SB 380's changes violate their speech rights.  *See* Dkt. 71-1 at 23-27.

## V.   PLAINTIFFS CANNOT STATE A VIABLE FREE SPEECH CLAIM

Plaintiffs next contend that the EOLOA's affirmative requirements constitute presumptively unconstitutional viewpoint-based regulation by compelling objectionable speech "directed against the viewpoint of religious health care

---

[5] Plaintiffs' reliance on *Thomas v. Review Bd. of Indiana Emp't Sec. Div.*, 450 U.S. 707, 714 (1981), where the Court reversed a denial of unemployment benefits to a worker who was fired for refusing to participate in the production of armaments on religious grounds, is also flawed.  In *Smith*, the Court explicitly limited *Thomas*'s rationale to the narrow context of denial of unemployment benefits, which is inapplicable here.  *Smith*, 494 U.S. at 883-84 (noting prior recognition that consideration of individual circumstances and discretionary exemptions are "distinctive feature[s]" of unemployment programs).

1    professionals regarding assisted suicide." Dkt. 98 at 28.  As detailed above,

2    however, there is no indication whatsoever that SB 380's changes to the Act, which

3    apply to *all non-participating providers regardless of their reason for objecting*,

4    were "directed" at religious beliefs.  Further, the Act's affirmative requirements do

5    not constitute unconstitutional content-based regulation.  To the extent the SB 380

6    amendments burden Plaintiffs' speech rights by requiring them to document a

7    patient's request for aid-in-dying in the medical record, that burdening is

8    constitutionally permissible as incidental to the ordinary regulation of medical

9    practice conduct.  *See Nat'l Inst. of Fam. and Life Advocs. v. Becerra*, 138 S. Ct.

10   2361, 2373-74 (2018); *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 884

11   (1992).

12       Here, Plaintiffs' allegation of unconstitutional burden flows from the legal

13   effect of documenting a patient's request—that the documentation counts as one of

14   the two prerequisite requests in the EOLOA's multi-step process for seeking aid-in-

15   dying medication.  It is worth noting, however, that all documentation by a provider

16   in a medical record, whether a diagnosis of an illness, summary of visit, or

17   treatment plan, has the potential for subsequent legal effect and collateral

18   consequences.  The EOLOA, in this sense, functions no differently than the

19   ordinary medical practice regulation that requires medical providers to document

20   important information in their patient's record.  Indeed, documenting and

21   transferring a medical record are well-established requirements of the practice of

22   medicine.  *See* Cal. Bus. & Prof. Code §§ 2266 (enacted 1996), 2225.5 (enacted

23   1993); 45 CFR § 164.524; RJN, Ex. 6, AMA Code of Medical Ethics 3.3.1(b).

24       Plaintiffs dispute the applicability of the *Becerra*/*Casey* doctrine, focusing in

25   particular on the continued viability of *Casey*'s informed consent holding.  Dkt. 98

26   at 26.  They note that the Supreme Court in *Dobbs v. Jackson Women's Health*, 142

27   S. Ct. 2228 (2022), recently overruled *Casey* without qualification.  Dkt. 98 at 26

28   n.9.  But that decision centered on *Casey*'s substantive due process holding that the

Fourteenth Amendment protects a right to an abortion. *See Dobbs*, 142 S. Ct. at 2242. Indeed, it is worth noting that the informed consent requirements approved in *Casey*—relevant to the free speech claim pressed here—were upheld notwithstanding *Casey*'s underlying reaffirmation of the constitutional right to an abortion. *Dobbs*'s elimination of this right does not call into question *Casey*'s First Amendment analysis.

Plaintiffs counter that even if *Casey* remains good law in this area, its implications for free speech claims were limited to the specific informed consent context at issue in that case. Dkt. 98 at 26. But *Casey*'s rationale is not logically cabined to this single context. The Supreme Court in *Becerra* reaffirmed this principle when it cited *Casey* to support the broader principle that States may regulate various types of professional conduct, even where that regulation incidentally burdens speech. *Becerra*, 138 S. Ct. at 2373-74. Moreover, apart from *Casey*, the Court has long held that the First Amendment does not bar regulations or restrictions on commerce or conduct that impose incidental burdens on speech. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011); *Rumsfeld v. F. for Acad. & and Institutional Rts., Inc.*, 547 U.S. 47, 62 (2006); *Cox v. Louisiana*, 379 U.S. 559, 564 (1965); *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949).

## VI. PLAINTIFFS CANNOT STATE A VIABLE DUE PROCESS CLAIM

As to their vagueness claim, Plaintiffs' arguments regarding the EOLOA's use of "terminal disease" and "providing information to a patient about this part" are misplaced and moot. Dkt. 98 at 29-30. This language refers to the acts of non-participation outlined in § 443.15(f)(3) and, as previously explained, SB 380 does not require non-participating providers to perform any of this conduct.

Plaintiffs' remaining argument, that the term "participation" is vague and ambiguous in the context of sections 443.14(e)(2), 443.14(e)(3), and 443.15(f), is premised on their strained understanding of the interplay between these sections. *See* Dkt. 98 at 30-31. Section 443.14(e)(2) expressly defines "participation" by

reference to § 443.15(f), and this provision, in turn, expressly defines "participation" in paragraph (2). Likewise, § 443.14(e)(3) expressly defines "participation" by reference to § 443.15(f)(2), which, again, expressly identifies the conduct that constitutes "participation." Neither § 443.14(e)(2) nor § 443.14(e)(3) give an indication of a "carve out" whereby the acts enumerated in § 443.15(f)(3) are indirectly mandated. Simply put, the statutory definition of "participation" under the Act is clear. Objecting providers need only look to § 443.15(f)(2) to identify the acts of participation they can refuse to perform and to reasonably understand their obligations and immunities as non-participating providers under § 443.14(e)(2) and (3), respectively.

## VII. PLAINTIFFS CANNOT STATE A VIABLE EQUAL PROTECTION CLAIM

Finally, on their equal protection claim, Plaintiffs disregard the meaningful differences that exist between providers who comply with the Act's provisions (either as participators or compliant non-participators) and providers who refuse to comply with the minimal requirements outlined in § 443.14(e)(2). Dkt. 98 at 31-32. However, similarly situated classifications are determined "in respects that are relevant to the [government's] challenged policy." *Roy v. Barr*, 960 F.3d 1175, 1181 (9th Cir. 2020). The provisions challenged here effectuate the State's policy of permitting an aid-in-dying option for terminally ill Californians, while affording objecting providers the right to refuse to provide aid-in-dying to those patients. In permitting discipline for non-compliant non-participators, the EOLOA permissibly distinguishes conduct that is fundamentally different with respect to the State's underlying purpose. Plaintiffs thus cannot demonstrate similarly situated classifications to support their equal protection claim.

Even if Plaintiffs could establish the prerequisite classifications, those classifications need only satisfy rational basis scrutiny because, as explained, Plaintiffs cannot establish that the Act's requirements for non-participating providers unconstitutionally burden any fundamental religion or speech rights. *See*

1   *Armour v. City of Indianapolis*, 556 U.S. 673, 680 (2012).  Here, California's

2   interests in protecting the public and safeguarding the quality of patient care by

3   ensuring that terminally ill patients are not delayed or obstructed in obtaining aid-

4   in-dying medication, as effectuated by the Act's non-participation provisions, are

5   not only rational; they are compelling and achieved in a narrowly-tailored and

6   carefully-balanced fashion.

7                              **CONCLUSION**

8       For the foregoing reasons, this Court should dismiss Plaintiffs' Complaint

9   with prejudice and without leave to amend.

10

11   Dated:  August 18, 2022                  Respectfully submitted,

12                                     ROB BONTA
                                   Attorney General of California
                                   DARRELL W. SPENCE

13                                    Supervising Deputy Attorney General

14

15

16                                    KEVIN L. QUADE
                                   Deputy Attorney General

17                                    *Attorneys for Defendants Rob Bonta,
                                   Attorney General of the State of*

18                                    *California, and Tomas Aragon, in his
                                   official capacity as the Director of the*

19                                    *California Department of Public
                                   Health*

20   SA2022400362

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

Case Name:   **Christian Medical & Dental Associations, et al. v. Rob Bonta, et al.**          No.      **8:22-cv-00274**

I hereby certify that on <u>August 18, 2022,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS ATTORNEY GENERAL OF CALIFORNIA AND DIRECTOR OF THE CALIFORNIA DEPARTMENT OF PUBLIC HEALTH'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>August 18, 2022</u>, at Sacramento, California.

| Christopher R. Irby | *S/ Christopher R. Irby* |
|:---:|:---:|
| Declarant | Signature |

SA2022400362
36461390.docx