ROB BONTA
Attorney General of California
ALEXANDRA M. ALVAREZ, State Bar No. 187442
STEPHEN C. DIEHL, State Bar No. 235250
Supervising Deputy Attorneys General
MARIANNE A. PANSA, State Bar No. 270928
ROSEMARY F. LUZON, State Bar No. 221544
Deputy Attorneys General
  2550 Mariposa Mall
  Fresno, CA 93721
  Telephone:  (559) 705-2329
  Fax:  (559) 445-5106
  E-mail:  Marianne.Pansa@doj.ca.gov
          Rosemary.Luzon@doj.ca.gov
*Attorneys for Medical Board of California Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS and LESLEE COCHRANE, M.D.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California; TOMÁS J. ARAGON, M.D., DR. P.H., in his official capacity as the Director of the California Department of Public Health and as the State Public Health Officer; and KRISTINA D. LAWSON, J.D., RANDY W. HAWKINS, M.D., LAURIE ROSE LUBIANO, J.D., RYAN BROOKS, MICHELLE BHOLAT, M.D., VELING TSAI, M.D., , JAMES M. HEALZER, M.D., ASIF MAHMOOD, M.D., DAVID RYU, RICHARD E. THORP, M.D., ESERICK WATKINS, AND NICOLE JEONG, J.D., in their official capacities as members of the Medical Board of California,**<br><br>Defendants. | Case No. 5:22-cv-00335-FLA-GJS<br><br>**MEDICAL BOARD OF CALIFORNIA DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**<br><br>Date:          September 16, 2022<br>Time:          1:30 p.m.<br>Courtroom:   6B<br>Judge:         The Honorable Fernando L. Aenlle-Rocha<br>Trial Date:    April 23, 2024<br>Action Filed: February 22, 2022 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

ARGUMENT......................................................................................................1

    I.     Section 443.14(e)(2) Enumerates The Only Affirmative
           Requirements For Non-Participating Providers...................................1

    II.    Plaintiffs Have Not Established Article III Standing..........................2

    III.   Plaintiffs' Claims Are Not Ripe For Adjudication .............................5

    IV.   The Eleventh Amendment Bars Claims Against The Medical
           Board of California Defendants ..........................................................6

    V.    Plaintiffs Cannot State a Viable Free Exercise of Religion Claim.......8

    VI.   Plaintiffs Cannot State a Viable Free Speech Claim.........................12

    VII.  Plaintiffs Cannot State a Viable Due Process Claim.........................14

    VIII. Plaintiffs Cannot State a Viable Equal Protection Claim..................15

CONCLUSION .................................................................................................15

# TABLE OF AUTHORITIES

**Page**

CASES

*Alabama v. Pugh*
  438 U.S. 781 (1978)...................................................................................7

*Arizona v. Yellen*
  34 F.4th 841 (9th Cir. 2022).......................................................................4

*Armour v. City of Indianapolis*
  556 U.S. 673 (2012).................................................................................15

*Barrett v. Univ. of N.M. Bd. of Regents*
  562 F. App'x 692 (10th Cir. 2014)..............................................................7

*Burwell v. Hobby Lobby Stores*
  573 U.S. 682 (2014)...................................................................................8

*Church of the Lukumi Babalu Aye. Inc. v. City of Hialeah*
  508 U.S. 520 (1993).........................................................................8, 9, 10

*City of Boerne v. Flores*
  521 U.S. 507 (1997)...................................................................................8

*Cox v. Louisiana*
  379 U.S. 559 (1965).................................................................................14

*Demery v. Kupperman*
  735 F.2d 1139 (9th Cir. 1984)................................................................6, 7

*Dobbs v. Jackson Women's Health*
  142 S. Ct. 2228 (2022).............................................................................13

*Emp. Div., Dep't of Hum. Res. of Or. v. Smith*
  494 U.S. 872 (1990).......................................................................8, 10, 11

*Fulton v. City of Philadelphia*
  141 S. Ct. 1868 (2021)...............................................................................8

*Giboney v. Empire Storage & Ice Co.*
  336 U.S. 490 (1949).................................................................................14

**TABLE OF AUTHORITIES**
(continued)

Page

*Grunert v. Campbell*
248 F. App'x 775 (9th Cir. 2007)......................................................7

*Guam v. Guerrero*
290 F.3d 1210 (9th Cir. 2002).........................................................8

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*
565 U.S. 171 (2012)....................................................................11

*Kennedy v. Bremerton Sch. Dist.*
139 S. Ct. 634 (2019)...................................................................8

*Kennedy v. Bremerton Sch. Dist.*
142 S. Ct. 2407 (2022).................................................................8

*LSO, Ltd. v. Stroh*
205 F.3d 1146 (9th Cir. 2000).........................................................3

*Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*
138 S. Ct. 1719 (2018)................................................................11

*Nat'l Inst. of Fam. and Life Advocs. v. Becerra*
138 S. Ct. 2361 (2018)........................................................12, 13, 14

*People v. Miracle*
6 Cal. 5th 318 (2018) ...................................................................2

*Planned Parenthood of Se. Pa. v. Casey*
505 U.S. 833 (1992)............................................................12, 13, 14

*Rhee v. Bholat et al.*
No. SACV 18-975 PA (JC), 2019 WL 4196064 (C.D. Cal., June 12,
2019) ....................................................................................6

*Roy v. Barr*
960 F.3d 1175 (9th Cir. 2020).........................................................15

*Rumsfeld v. F. for Acad. and Institutional Rts., Inc.*
547 U.S. 47 (2006)......................................................................14

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*San Jose Christian College v. City of Morgan Hill*
    360 F.3d 1024 (9th Cir. 2004)..................................................................12

*Sorrell v. IMS Health Inc.*
    564 U.S. 552 (2011).................................................................................14

*Sprague v. Medical Board of California*
    No. 07-CV-1561-JLS, 2009 WL 10698417 (S.D. Cal. March 30,
    2009) ..........................................................................................................6

*Stormans, Inc. v. Selecky*
    586 F.3d 1109 (9th Cir. 2009)..............................................................5, 10

*Stravrianoudakis v. United States Dep't of Fish & Wildlife*
    435 F. Supp. 3d 1063 (E.D. Cal. 2020) ..................................................3

*Susan B. Anthony (SBA) List v. Driehaus*
    573 U.S. 149 (2014)...................................................................................4

*Telescope Media Grp. v. Lucero*
     936 F.3d 740, 759 (8th Cir. 2019) ........................................................12

*Thomas v. Anchorage Equal Rights Comm'n*
    220 F.3d 1134 (9th Cir. 2000)......................................................*passim*

*Thomas v. Review Bd. of Indiana Emp't Sec. Div.*
    450 U.S. 707 (1981).................................................................................11

*Twitter, Inc. v. Paxton*
    26 F.4th 1119 (9th Cir. 2022)..............................................................5, 6

*United States v. X-Citement Video, Inc.*
    513 U.S. 64 (1994)....................................................................................2

# TABLE OF AUTHORITIES
## (continued)

Page

**STATUTES**

California Business and Professions Code
§ 2000-2004 .......................................................................................7
§ 2001.1 ..............................................................................................7
§ 2013(c) .............................................................................................6
§ 2266 ................................................................................................13
§ 2225.5 .............................................................................................13

California Government Code
§ 11500-11530 ....................................................................................7

California Health and Safety Code
§ 443.14(e) ...........................................................................................1
§ 443.14(e)(2) ..............................................................................*passim*
§ 443.14(e)(3) .....................................................................................14
§ 443.15(f) ..........................................................................................14
§ 443.15(f)(2) ......................................................................................14
§ 443.15(f)(3) ...................................................................................2,14

45 Code of Federal Regulations
§ 164.524 ...........................................................................................13

**CONSTITUTIONAL PROVISIONS**

United States Constitution
First Amendment ........................................................................8, 13, 14
Eleventh Amendment.....................................................................1, 6, 7
Fourteenth Amendment ......................................................................13

**OTHER AUTHORITIES**

California's End of Life Option Act.............................................*passim*

Religious Freedom Restoration Act of 1993 ........................................8

Senate Bill No. 380.....................................................................*passim*

# INTRODUCTION

Plaintiffs' Opposition falls short on all issues raised by Defendants' Motion to Dismiss. Initially, Plaintiffs cannot overcome the dispositive procedural defects that require dismissal of this case, namely, the absence of Article III standing and ripeness, and the Eleventh Amendment immunity of the Medical Board of California (MBC) Defendants. Moreover, they have not shown that any of their constitutional challenges to SB 380 have merit. This Court lacks jurisdiction over this matter and Plaintiffs fail to state plausible constitutional claims. Accordingly, dismissal with prejudice is warranted.

# ARGUMENT

## I.   SECTION 443.14(E)(2) ENUMERATES THE ONLY AFFIRMATIVE REQUIREMENTS FOR NON-PARTICIPATING PROVIDERS

As explained in Defendants' Motion, ordinary principles of statutory construction preclude Plaintiffs' argument that the End of Life Option Act (EOLOA or Act) requires non-participating providers to do more than § 443.14(e)(2)'s list of affirmative acts. *See* Dkt. 71-1 at 15-18. This Court need not go beyond the Act's plain language in § 443.14(e)(2), which includes a complete list of the acts that non-participating providers "shall, at a minimum," perform. This language provides the most direct and concrete evidence of the conduct that is required. And the conduct alleged by Plaintiffs is not on that affirmative list.

Still, even if the Court were to find that some ambiguity exists in the statutory language, the legislative history confirms Defendants' construction. The initial draft of SB 380 introduced in February 2021 explicitly required non-participating providers to diagnose terminal illnesses, assess mental capacity, provide information about the EOLOA, and refer patients for aid in dying in § 443.14(e). Request for Judicial Notice in Support of Motion to Dismiss (RJN), Ex. 7, Sen. Bill No. 380 as introduced Feb. 10, 2021, pp. 14-15. However, this proposed language was removed from § 443.14(e) when the Senate amended the bill in April 2021.

RJN, Ex. 8, Sen. Bill No. 380 as amended Apr. 5, 2021, pp. 13-14.  Contrary to Plaintiffs' interpretation, the Senate Judiciary Committee Analysis explained that the language was deleted specifically to ensure that non-participating providers would not be required to engage in the conduct described in the stricken language. *See* RJN, Ex. 2, Sen. Judiciary Comm. Analysis, pp. 10-12.

Plaintiffs dispute the value of this legislative history, arguing that the Judiciary Committee's report is "ambiguous and incomplete," and fails to indicate which version of the bill it was addressing.  Dkt. 98 at 14-15.  However, the report explicitly referred to the April 5, 2021 amended version of the bill.  *See* RJN, Ex. 2, Sen. Judiciary Comm. Analysis, p. 1.  Moreover, the report unequivocally contradicts Plaintiffs' reading of the EOLOA, detailing the Legislature's concern that the deleted language would have opened up providers to liability for failing to provide information or refer patients, and explaining that the amendment was intended to remove any such requirements from the Act.  *Id*. at pp. 10-12.  In the face of this legislative history, Plaintiffs' suggestion that the committee somehow "failed to account for" the additional requirements they read from § 443.15(f)(3) is implausible, as any affirmative obligations beyond § 443.14(e)(2) were removed. Plaintiffs' contrary reading of the Act thus conflicts with the statute's plain language and the legislative history.  Such a reading would also violate a fundamental cannon of construction that statutes should be construed in a manner that avoids constitutional questions.  *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994); *People v. Miracle*, 6 Cal. 5th 318, 339 (2018).

## II.   PLAINTIFFS HAVE NOT ESTABLISHED ARTICLE III STANDING

Plaintiffs' assertion of standing is based solely on allegations in the Complaint that Plaintiffs intend to violate SB 380 in the future, followed by legal argument that a credible threat of enforcement should be presumed.  Dkt. 98 at 16-17.  This showing fails to satisfy their burden to establish standing.  *Rattlesnake Coal. v. U.S.*

///

2

*E.P.A.*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007) ("[T]he party asserting subject matter jurisdiction has the burden of proving its existence.").

In attempting to support their purported intent to violate SB 380, Plaintiffs aver that they "will not comply" with SB 380's requirements "because of their religious and moral convictions." Dkt. 98 at 16. However, "something more than a hypothetical intent to violate the law [is required], [and] plaintiffs must give details about their future [conduct] such as 'when, to whom, where, or under what circumstances' of the plan to violate the law." *Stravrianoudakis v. United States Dep't of Fish & Wildlife*, 435 F. Supp. 3d 1063, 1085 (E.D. Cal. 2020) (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)). Plaintiffs offer no such details. Most tellingly, they fail to allege the predicate facts necessary for them to commit a violation of SB 380 in the first place—that terminally ill patients have requested their assistance for aid-in-dying and they have refused to act in accordance with the EOLOA. Indeed, the fact that Plaintiff Cochrane works at a non-participating facility renders it exceedingly unlikely that he will encounter an aid-in-dying request that he must refuse. Absent such predicate facts, Plaintiffs' pleading amounts to the mere possibility that they may encounter a patient requesting aid-in-dying assistance at some point in the future and that they would refuse to comply with SB 380's limited requirements. Such speculation is insufficient to establish standing. *Thomas*, 220 F.3d at 1140 ("'[S]ome day' intentions—without . . . specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.").

Plaintiffs' assertion of a credible threat of enforcement is likewise unsubstantiated. They submit that because SB 380 was recently enacted and Defendants have not disavowed enforcement, a credible threat necessarily exists. Dkt. 98 at 18-19. But these are just two factors in the analysis and are hardly decisive. *See LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) ("[w]e

3

consider a variety of factors" and "enforcement history alone is not dispositive"). Most pertinent, and as discussed, Plaintiffs have not shown that they have or will act in a manner that could subject them to enforcement.  Indeed, in every case Plaintiffs cite finding a threat of enforcement, there was clear evidence of an existing course of conduct proscribed by the challenged law.  *See* Dkt. 98 at 16-18 (citing, *e.g., Susan B. Anthony (SBA) List v. Driehaus*, 573 U.S. 149, 161-62, 164 (2014) (organizations made statements that violated the challenged statute, leading to prior enforcement proceedings); *Virginia v. Am. Booksellers Ass'n, Inc*., 484 U.S. 383, 390-91 (1988) (almost half of booksellers' inventory was proscribed by the challenged statute); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 (9th Cir. 2013) (pastor sheltered and transported unauthorized aliens, constituting conduct prohibited by the challenged statute)).[1]

Plaintiffs here, by contrast, merely allege that they provide care and treatment to terminally ill patients on a daily basis.  But they have not identified a single instance in which they have been asked by a patient to provide aid-in-dying, which they refused—the scenario affected by SB 380.  Had Plaintiff Cochrane, for instance, ever encountered this scenario in his practice, he would have undoubtedly alleged it.  This pleading deficiency, together with the uncontroverted fact that no California licensed physician has been disciplined for violations arising under the EOLOA since its inception, *see* Declaration of Jenna Jones in support of Motion to Dismiss, ¶¶ 6-7, overwhelmingly demonstrates the speculative nature of Plaintiffs' claimed enforcement threat.[2]

---

[1] Plaintiffs also cite *Hedges v. Obama*, but that case actually supports Defendants' position because, as in this case, the connection between the plaintiffs' conduct and the challenged statute was wholly absent.  724 F.3d 170, 201-04 (2d Cir. 2013) (denying standing because plaintiffs lacked examples, either personally or of similarly situated individuals, of military detention intended or threatened by the government, such that enforcement against them was not even remotely likely).

[2] Plaintiffs' attempt to minimize the Ninth Circuit's precedent in *Thomas* is unavailing.  *See* Dkt. 98 at 17 n.5.  *Thomas* remains good law after the Supreme Court's 2014 decision in *SBA List*.  *See, e.g.*, *Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022) (applying *Thomas* to evaluate the genuineness of plaintiff's claimed

### III.  PLAINTIFFS' CLAIMS ARE NOT RIPE FOR ADJUDICATION

Plaintiffs' claims similarly should be dismissed for lack of prudential ripeness.[3]  Plaintiffs first contend that their constitutional claims are purely legal and, thus, necessarily ripe for determination.  Dkt. 98 at 20.  However, their claims are premised on alleged threats of disciplinary enforcement that are inherently amorphous and may easily raise many "incomplete hypotheticals" and "open factual questions."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (citing *Thomas*, 220 F.3d at 1142 n.8).  For example, there is no suggestion that Plaintiffs have actually encountered and refused a patient's request for aid-in-dying, and, if this has occurred, which acts in § 443.14(e)(2) they refused to perform.  Likewise, it is not clear whether Plaintiffs can or would comply with some of the non-participation requirements.  Plaintiffs' claims plainly rest upon hypothetical situations involving hypothetical providers and hypothetical patients, which necessarily render the case unfit for review.  *Thomas*, 220 F.3d at 1141-42 (declining jurisdiction on ripeness grounds, explaining "the landlords ask us to declare Alaska laws unconstitutional, in the absence of any identifiable tenants and with no concrete factual scenario that demonstrates how the laws, as applied, infringe their constitutional rights").

Regarding hardship, Plaintiffs' only contention is that they risk disciplinary proceedings.  Dkt. 98 at 19-20.  But "the absence of any real or imminent threat of enforcement, particularly criminal enforcement, seriously undermines any claim of hardship."  *Thomas*, 220 F.3d at 1142.  On the other hand, Plaintiffs fail to meaningfully address the hardship to Defendants associated with defending SB

---

threat of enforcement for standing purposes).  Moreover, *Thomas* squarely rejected the type of contingent threats proffered by Plaintiffs in this case, emphasizing that such a threat, when "based on a future violation—which may never occur—is beyond speculation."  220 F.3d at 1140.

[3] Having failed to establish the requisite injury-in-fact for standing, it follows that Plaintiffs also cannot satisfy their jurisdictional burden of demonstrating this case is constitutionally ripe for adjudication.  *Twitter, Inc. v. Paxton*, 26 F.4th 1119, 1123 (9th Cir. 2022) ("[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry").

380's amendments to the EOLOA in an abstract, hypothetical posture, as well as the deprivation of the State's ability to determine—based on real-world circumstances—how SB 380 applies to its licensed providers in the first instance. This demonstrably one-sided balance of hardships favors dismissal on ripeness grounds. *See Thomas*, 220 F.3d at 1142 ("by being forced to defend the housing laws in a vacuum and in the absence of any particular victims of discrimination, the State and the City would suffer hardship were we to adjudicate this case now"); *see also Twitter*, 26 F.4th at 1125 (declining to determine the constitutionality of a state's law in a "hypothetical situation" before the state has "even decided whether its law applies").

## IV. THE ELEVENTH AMENDMENT BARS CLAIMS AGAINST THE MEDICAL BOARD OF CALIFORNIA DEFENDANTS

Notwithstanding Plaintiffs' arguments regarding *Ex parte Young*, "[t]he Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest[.]'" *Demery v. Kupperman*, 735 F.2d 1139, 1146 (9th Cir. 1984) (quoting *Pennhurst State. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)). As the Court explained in *Sprague*, all MBC actions require a quorum/majority vote, such that individual MBC members cannot act on their own; they must act as an entity. Cal. Bus. & Prof. Code § 2013(c). Because individual Board members lacked the power to carry out the prospective relief sought, the official-capacity claims were dismissed. *Sprague*, No. 07-CV-1561-JLS, 2009 WL 10698417 at *7 (S.D. Cal. March 30, 2009), aff'd, 402 F. App'x 275 (9th Cir. 2010) (absent the requisite connection between MBC members and the relief sought, the suit was making MBC members "a party as a representative of the state, and thereby attempting to make the state a party"); *Rhee v. Bholat et al.*, No. SACV 18-975 PA (JC), 2019 WL 4196064 at *7 (C.D. Cal., June 12, 2019) (same).

Here, at the heart of Plaintiffs' claims against the MBC members is what the MBC does as an entity pursuant to state law – that is, to take disciplinary action

against physicians.  Thus, since all decisions require Board action, naming each MBC member is an impermissible end-run around the MBC's sovereign immunity as private suits against state agencies are prohibited in federal court.  *Alabama v. Pugh*, 438 U.S. 781 (1978); *Grunert v. Campbell*, 248 F. App'x 775, 778 (9th Cir. 2007) (suit against individual board members was a "suit against the state barred by the Eleventh Amendment" since the challenged regulations could be promulgated only by a majority of board members "**officially acting as the [b]oard**" and not by board members individually) (emphasis in original); *Barrett v. Univ. of N.M. Bd. of Regents*, 562 F. App'x 692, 694 (10th Cir. 2014) (denying application of *Ex parte Young* because "individual Board members are not empowered to act individually, but must act as 'a body corporate'").

"The general rule is that a suit is against the sovereign [and is therefore barred] if 'the judgment sought would . . . interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'"  *Demery*, 735 F.2d at 1146 (citation omitted).  Eleventh Amendment immunity is particularly warranted in this case:  the requested relief directly affects the healthcare of every Californian, would significantly disrupt the MBC's statutory public protection mandate, and hinders longstanding healthcare oversight laws and the administrative physician disciplinary processes statewide. Cal. Bus. & Prof. Code § 2001.1 ("Protection of the public shall be the highest priority for the Medical Board of California in exercising its . . . disciplinary functions.  Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount."); Cal. Bus. & Prof. Code §§ 2000-2004; Cal. Gov. Code §§ 11500-11530.[4]

///

///

---

[4] By failing to address the MBC Defendants' argument that they are entitled to absolute immunity for future quasi-judicial acts, Plaintiffs have waived those arguments.

## V. PLAINTIFFS CANNOT STATE A VIABLE FREE EXERCISE OF RELIGION CLAIM

In arguing that SB 380 unconstitutionally burdens their religious exercise by "requiring them to facilitate assisted suicide," Plaintiffs suggest that burden on religious exercise alone, without further analysis, establishes a violation of the First Amendment. *See* Dkt. 98 at 21 (citing *Burwell v. Hobby Lobby Stores*, 573 U.S. 682 (2014)).[5]  However, the Supreme Court has long held that incidental burdens on religious exercise are constitutionally permissible, so long as the burdening law is religiously neutral and generally applicable.  Dkt. 71-1 at 27; *see Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 878-82 (1990).

Ignoring this precedent, Plaintiffs argue that *Smith* should nonetheless be overruled, stating that four Justices of the Supreme Court have previously called for *Smith* to be reexamined.  Dkt. 98 at 24 n.8 (citing *Kennedy v. Bremerton Sch. Dist.*, 139 S. Ct. 634, 637 (2019) (Alito, J., statement respecting denial of certiorari)). Setting aside that this Court has no power to overrule or refuse to follow *Smith*, Plaintiffs neglect to mention that the Supreme Court was recently presented with an opportunity to reexamine *Smith* and a six-Justice majority declined to do so.  *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876-77 (2021); *id.* at 1882-83 (Barrett, J., concurring); *see also Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421-23 (2022) (applying *Smith* as first step in free exercise analysis).  In any event, unless and until the Supreme Court revisits *Smith*, it remains binding precedent.

Plaintiffs' contentions under the well-established analysis for free exercise claims fare no better.  Dkt. 98 at 21-25.  Plaintiffs cite to *Church of the Lukumi Babalu Aye. Inc. v. City of Hialeah*, 508 U.S. 520, 532-40 (1993), to argue that SB

---

[5] *Burwell* has no application here.  That case concerned a challenge brought under the Religious Freedom Restoration Act of 1993 (RFRA).  *See Burwell*, 573 U.S. at 688.  RFRA provides a level of protection for religious exercise beyond that which the First Amendment requires, but is not applicable to the States.  *Guam v. Guerrero*, 290 F.3d 1210, 1218 (9th Cir. 2002); *see City of Boerne v. Flores*, 521 U.S. 507, 532 (1997).

380's amendments are neither neutral nor generally applicable because the amendments (1) were gerrymandered to single out religious conduct for disfavored treatment, and (2) apply differential treatment among religions.  Both arguments are demonstrably false.  First, nothing in the plain text of the EOLOA or the legislative history concerning SB 380's changes gives the slightest indication of intent to disfavor or discriminate against religious exercise.  To the contrary, the Legislature placed respect and deference for religious exercise at the forefront of its considerations.  Indeed, the initial version of SB 380 was revised out of concern that the bill "arguably did not strike the right balance" between the provision of unobstructed aid-in-dying services and respect for the sincerely-held beliefs of objecting providers.  RJN, Ex. 2, Sen. Judiciary Comm. Analysis, p. 10.  In striking the appropriate balance, the Legislature determined that non-participating providers, including those who object on religious grounds, need not substantively participate in the aid-in-dying process, but must take three nominal steps—which are fundamental medical practices—to ensure that terminally ill patients are not obstructed from seeking such aid if desired.

Second, Plaintiffs point to protections for providers who comply with the Act's provisions and argue that the absence of similar protections for non-participators who refuse to comply with the minimal requirements of § 443.14(e)(2) constitutes impermissible favoring of secular conduct.  Dkt. 98 at 22.  However, this comparison is faulty.  An ostensibly neutral law constitutes a religious gerrymander and implies discrimination only where the law prohibits religious conduct but exempts other comparable secular conduct from prohibition.  *Lukumi*, 508 U.S. at 535-37.  Here, however, the conduct of providers who comply with the Act's provisions (participators and non-participators alike) is not comparable to the conduct of providers who fail to comply.  In fact, these categories of conduct are fundamentally different with respect to the purpose of the law because the former facilitates the intended operation of the Act, while the latter does not.  Moreover,

1   the EOLOA does not treat secular refusals more favorably than religious refusals.

2   As explained, although providers can decline to participate in the EOLOA for any

3   reason, all non-participators, *whether they object on secular or religious grounds*,

4   must comply with § 443.14(e)(2)'s requirements.  Thus, consistent with *Lukumi*,

5   the Act does not draw lines around or differentiate comparable secular and religious

6   conduct.

7        Third, the Act does not, as Plaintiffs assert, impermissibly discriminate against

8   differing religious views.  *See* Dkt. 98 at 24 (referring to the immunity received by

9   religious providers who are willing to comply with § 443.14(e)(2)).  Such an

10  argument could be made against any law that purportedly burdens some person's

11  religious exercise.  That some religious providers object while others comply does

12  not undermine the Act's neutrality or establish religious discrimination.  The

13  Supreme Court's religious liberty jurisprudence has, for decades, explicitly rejected

14  Plaintiffs' premise that people of faith can individually tailor their compliance with

15  neutral secular law in accordance with their religious convictions.  *Smith*, 494 U.S.

16  at 878-82, 888; *accord Stormans*, 586 F.3d at 1128.

17       Lastly, Plaintiffs' contention that SB 380 constitutes impermissible religious

18  targeting by infringing on more religious practice than necessary to achieve its

19  purpose lacks merit.  Dkt. 98 at 23.  Specifically, Plaintiffs argue that since non-

20  participation by religious providers was not deemed problematic under the earlier

21  version of the EOLOA, the "narrow[ing of] protections for religious objectors" is

22  evidence of intentional discrimination.  *Id.*  But this argument flows from the false

23  premise that SB 380's amendments were aimed at religion.  To the extent

24  § 443.14(e)(2)'s requirements for non-participators are viewed as a "narrowing" of

25  immunity, that narrowing explicitly applies to *all objectors*, not just religious

26  objectors.  The fact that SB 380's legislative history did not specify a problem with

27  religious non-compliance is thus immaterial because the general problem of delay

28  in the process of obtaining aid-in-dying medication, for which the Legislature

crafted a generally applicable and religiously neutral remedy, was well documented.  *See* RJN, Ex. 1, Sen. Health Comm. Analysis, pp. 5-6, 7; Ex. 3, Assem. Judiciary Comm. Analysis, p. 1; Ex. 4, Assem. Floor Analysis, p. 2.

Plaintiffs' alternative argument, that SB 380's changes to the EOLOA (even if neutral and generally applicable) are nevertheless unconstitutional because they violate rights of conscience "deeply rooted" in the Religion Clauses, also fails. Dkt. 98 at 24-25.  This argument flows from *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 190 (2012), where the Supreme Court recognized an exception to neutral and generally applicable prohibitions on employment discrimination for the hiring of ministers by religious employers.  But *Hosanna-Tabor*'s uniquely narrow and clergy-centric departure from the ordinary free exercise analysis has no application here, where Plaintiffs are physicians engaged in the regular practice of medicine.  *See* Dkt. 1 ¶¶ 7-10.  They do not allege to be members of the clergy or to have any special professional role in proselytizing to others on behalf of their employer.  Though Plaintiffs hold sincere religious beliefs that allegedly conflict with the EOLOA's non-participation requirements, this is the case in every free exercise challenge to a neutral and generally applicable law.  Plaintiffs' expansion of *Hosanna-Tabor*'s holding to include any instance where a neutral law incidentally burdens a value "deeply rooted" in religion, swallows the well-established *Smith* free exercise analysis and should be rejected. *See Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1727 (2018) (distinguishing "confined" exception to anti-discrimination laws for clergy in context of same-sex marriage from claims made by other service providers based on religious beliefs).[6]

_____

[6] Plaintiffs' reliance on *Thomas v. Review Bd. of Indiana Emp't Sec. Div.*, 450 U.S. 707, 714 (1981), where the Court reversed a denial of unemployment benefits to a worker who was fired for refusing to participate in the production of armaments on religious grounds, is also flawed.  In *Smith*, the Court explicitly limited *Thomas*'s rationale to the narrow context of denial of unemployment benefits, which is inapplicable here.  *Smith*, 494 U.S. at 883-84 (noting prior

Finally, Plaintiffs argue that this case concerns a "hybrid" situation, where application of SB 380's neutral and generally applicable requirements is constitutionally barred because those mandates burden not only religious exercise, but also freedom of speech.  Dkt. 98 at 25 (citing *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 759 (8th Cir. 2019)).  The Ninth Circuit has held, however, that such "hybrid" claims require that a free exercise plaintiff make out a "colorable claim" that a companion right has been violated, meaning a showing of "fair probability or a likelihood" of success on the companion claim.  *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1032 (9th Cir. 2004).  As explained in the Motion and below, Plaintiffs have not established a "colorable" claim that SB 380's changes violate their speech rights.  *See* Dkt. 71-1 at 23-27.

## VI.   PLAINTIFFS CANNOT STATE A VIABLE FREE SPEECH CLAIM

Plaintiffs next contend that the EOLOA's affirmative requirements constitute presumptively unconstitutional viewpoint-based regulation by compelling objectionable speech "directed against the viewpoint of religious health care professionals regarding assisted suicide."  Dkt. 98 at 28.  As detailed above, however, there is no indication whatsoever that SB 380's changes to the Act, which apply to *all non-participating providers regardless of their reason for objecting*, were "directed" at religious beliefs.  Further, the Act's affirmative requirements do not constitute unconstitutional content-based regulation.  To the extent the SB 380 amendments burden Plaintiffs' speech rights by requiring them to document a patient's request for aid-in-dying in the medical record, that burdening is constitutionally permissible as incidental to the ordinary regulation of medical practice conduct.  *See Nat'l Inst. of Fam. and Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2373-74 (2018); *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 884 (1992).

recognition that consideration of individual circumstances and discretionary exemptions are "distinctive feature[s]" of unemployment programs).

Here, Plaintiffs' allegation of unconstitutional burden flows from the legal effect of documenting a patient's request—that the documentation counts as one of the two prerequisite requests in the EOLOA's multi-step process for seeking aid-in-dying medication.  It is worth noting, however, that all documentation by a provider in a medical record, whether a diagnosis of an illness, summary of visit, or treatment plan, has the potential for subsequent legal effect and collateral consequences.  The EOLOA, in this sense, functions no differently than the ordinary medical practice regulation that requires medical providers to document important information in their patient's record.  Indeed, documenting and transferring a medical record are well-established requirements of the practice of medicine.  *See* Cal. Bus. & Prof. Code §§ 2266 (enacted 1996), 2225.5 (enacted 1993); 45 CFR § 164.524; RJN, Ex. 6, AMA Code of Medical Ethics 3.3.1(b).

Plaintiffs dispute the applicability of the *Becerra*/*Casey* doctrine, focusing in particular on the continued viability of *Casey*'s informed consent holding.  Dkt. 98 at 26.  They note that the Supreme Court in *Dobbs v. Jackson Women's Health*, 142 S. Ct. 2228 (2022), recently overruled *Casey* without qualification.  Dkt. 98 at 26 n.9.  But that decision centered on *Casey*'s substantive due process holding that the Fourteenth Amendment protects a right to an abortion.  *See Dobbs*, 142 S. Ct. at 2242.  Indeed, it is worth noting that the informed consent requirements approved in *Casey*—relevant to the free speech claim pressed here—were upheld notwithstanding *Casey*'s underlying reaffirmance of the constitutional right to an abortion.  *Dobbs*'s elimination of this right does not call into question *Casey*'s First Amendment analysis.

Plaintiffs counter that even if *Casey* remains good law in this area, its implications for free speech claims were limited to the specific informed consent context at issue in that case.  Dkt. 98 at 26.  But *Casey*'s rationale is not logically cabined to this single context.  The Supreme Court in *Becerra* reaffirmed this principle when it cited *Casey* to support the broader principle that States may

1    regulate various types of professional conduct, even where that regulation

2    incidentally burdens speech.  *Becerra*, 138 S. Ct. at 2373-74.  Moreover, apart from

3    *Casey*, the Court has long held that the First Amendment does not bar regulations

4    or restrictions on commerce or conduct that impose incidental burdens on speech.

5    *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011); *Rumsfeld v. F. for Acad.*

6    *and Institutional Rts., Inc.*, 547 U.S. 47, 62 (2006); *Cox v. Louisiana*, 379 U.S. 559,

7    564 (1965); *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949).

8    **VII. PLAINTIFFS CANNOT STATE A VIABLE DUE PROCESS CLAIM**

9         As to their vagueness claim, Plaintiffs' arguments regarding the EOLOA's use

10   of "terminal disease" and "providing information to a patient about this part" are

11   misplaced and moot.  Dkt. 98 at 29-30.  This language refers to the acts of non-

12   participation outlined in § 443.15(f)(3) and, as previously explained, SB 380 does

13   not require non-participating providers to perform any of this conduct.

14        Plaintiffs' remaining argument, that the term "participation" is vague and

15   ambiguous in the context of sections 443.14(e)(2), 443.14(e)(3), and 443.15(f), is

16   premised on their strained understanding of the interplay between these sections.

17   *See* Dkt. 98 at 30-31.  Section 443.14(e)(2) expressly defines "participation" by

18   reference to § 443.15(f), and this provision, in turn, expressly defines

19   "participation" in paragraph (2).  Likewise, § 443.14(e)(3) expressly defines

20   "participation" by reference to § 443.15(f)(2), which, again, expressly identifies the

21   conduct that constitutes "participation."  Neither § 443.14(e)(2) nor § 443.14(e)(3)

22   give an indication of a "carve out" whereby the acts enumerated in § 443.15(f)(3)

23   are indirectly mandated.  Simply put, the statutory definition of "participation"

24   under the Act is clear.  Objecting providers need only look to § 443.15(f)(2) to

25   identify the acts of participation they can refuse to perform and to reasonably

26   understand their obligations and immunities as non-participating providers under

27   § 443.14(e)(2) and (3), respectively.

28   ///

## VIII. PLAINTIFFS CANNOT STATE A VIABLE EQUAL PROTECTION CLAIM

Finally, on their equal protection claim, Plaintiffs disregard the meaningful differences that exist between providers who comply with the Act's provisions (either as participators or compliant non-participators) and providers who refuse to comply with the minimal requirements outlined in § 443.14(e)(2). Dkt. 98 at 31-32. However, similarly situated classifications are determined "in respects that are relevant to the [government's] challenged policy." *Roy v. Barr*, 960 F.3d 1175, 1181 (9th Cir. 2020). The provisions challenged here effectuate the State's policy of permitting an aid-in-dying option for terminally ill Californians, while affording objecting providers the right to refuse to provide aid-in-dying to those patients. In permitting discipline for non-compliant non-participators, the EOLOA permissibly distinguishes conduct that is fundamentally different with respect to the State's underlying purpose. Plaintiffs thus cannot demonstrate similarly situated classifications to support their equal protection claim.

Even if Plaintiffs could establish the prerequisite classifications, those classifications need only satisfy rational basis scrutiny because, as explained, Plaintiffs cannot establish that the Act's requirements for non-participating providers unconstitutionally burden any fundamental religion or speech rights. *See Armour v. City of Indianapolis*, 556 U.S. 673, 680 (2012). Here, California's interests in protecting the public and safeguarding the quality of patient care by ensuring that terminally ill patients are not delayed or obstructed in obtaining aid-in-dying medication, as effectuated by the Act's non-participation provisions, are not only rational; they are compelling and achieved in a narrowly-tailored and carefully-balanced fashion.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' Complaint with prejudice and without leave to amend.

///

Dated:  August 18, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
ALEXANDRA M. ALVAREZ
Supervising Deputy Attorney General
STEPHEN C. DIEHL
Supervising Deputy Attorney General

ROSEMARY F. LUZON
Deputy Attorney General
*Attorneys for Medical Board of California Defendants*

# CERTIFICATE OF SERVICE

Case Name: **Christian Medical & Dental Associations et al. v. Bonta et al.**     No.     **5:22-cv-00335-FLA-GJS**

I hereby certify that on <u>August 19, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

## MEDICAL BOARD OF CALIFORNIA DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>August 19, 2022</u>, at San Diego, California.

_____          _____
Ileana G. Chavarin                                                    Signature
Declarant

FR2022300864
83561185.doc