UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN MEDICAL AND DENTAL ASSOCIATION, et al.,<br><br>     Plaintiffs,<br><br>  v.<br><br>ROB BONTA, et al.,<br><br>     Defendants. | Case No. 5:22-cv-00335-FLA (GJSx)<br><br>**ORDER DENYING DEFENDANTS' JOINT MOTION FOR RECONSIDERATION**<br>**[DKTS. 110, 111, 112]** |

## RULING

Before the court is Defendants' Joint Motion for Reconsideration.  Dkts. 110, 111, 112.  On October 17, 2022, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for October 21, 2022.  Dkt. 120; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.  For the reasons stated herein, the court DENIES Defendants' Joint Motion for Reconsideration.  Dkts. 110, 111, 112.

## BACKGROUND

On February 22, 2022, Plaintiffs Christian Medical and Dental Association ("CMDA") and Leslee Cochrane ("Cochrane") (collectively, "Plaintiffs") filed this action against Defendants Rob Bonta, Attorney General of California, in his official

capacity ("Bonta"); and Tomás J. Aragón, M.D., Dr. P.H., in his official capacity as the Director of the California Department of Public Health and the State Public Health Officer ("Aragón") (collectively, the "State Officer Defendants"), and Michelle Bholat, M.D.; Ryan Brooks; Randy W. Hawkins, M.D.; James M. Healzer, M.D.; Nicole Jeong, J.D.; Kristina D. Lawson, J.D.; Laurie Rose Lubiano, J.D.; Asif Mahmood, M.D.; David Ryu; Richard E. Thorp, M.D.; Veling Tsai, M.D.; and Eserick Watkins, in their official capacities as members of the Medical Board of California[1] (collectively, the "MBC Defendants") (all together, "Defendants"), seeking an order restraining Defendants from enforcing certain provisions of Senate Bill No. 380 ("SB 380") as unconstitutional. *See generally* Dkt. 1 ("Compl."). In their Complaint, Plaintiffs bring four claims for declaratory and injunctive relief for alleged violations of: (1) freedom of speech under the First Amendment, (2) free exercise of religion under the First Amendment, (3) due process under the Fourteenth Amendment, and (4) equal protection under the Fourteenth Amendment. *Id.*

On September 2, 2022, the court granted in part Plaintiffs' Motion for a Preliminary Injunction and enjoined Defendants from enforcing the provision of California Health & Safety Code § 443.14(e)(2) ("Section 443.14(e)(2)") which requires a health care provider who is unable or unwilling to participate in the California End of Life Option Act (the "Act"), Cal. Health & Safety Code §§ 443-443.22 (Cal. Health & Safety Code Division 1, Part 1.85), to "document the individual's date of request and provider's notice to the individual of their objection in the medical record[.]" Dkt. 108 at 26. Four days later, on September 6, 2022, the Ninth Circuit issued its opinion in *Tingley v. Ferguson*, 47 F.4th 1055 (9th Cir. 2022), holding that a Washington law that regulated and disciplined health care providers for

---

[1] On August 10, 2022, the court granted the parties' joint stipulation to substitute the new members of the Medical Board of California, Michelle Bholat, M.D.; Nicole Jeong, J.D.; and Veling Tsai, M.D. for previous members Alejandra Campoverdi; Dev GnanaDev, M.D.; and Felix C. Yip, M.D. Dkt. 102.

2

practicing conversion therapy on minors, did not violate the First or Fourteenth Amendments. *Id.* at 1064. Defendants contend the Ninth Circuit's decision is an intervening change in controlling law, and under *Tingley*, Section 443.14(e)(2) does not violate the First Amendment's free speech protections. Mot. Brs.[2] at 3.

## DISCUSSION

### I. Legal Standard

Under Federal Rule of Civil Procedure 60(b), a court may grant relief from a judgment or order for "any … reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Local Rule 7-18, which governs motions for reconsideration, provides:

> A motion for reconsideration of an Order on any motion or application may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or (b) the emergence of new material facts or a change of law occurring after the Order was entered, or (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered. No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion.

Local Rule 7-18. Whether to grant a motion for reconsideration under Local Rule 7-18 is a matter within the court's discretion. *Daghlian v. Devry Univ., Inc.*, 582 F. Supp. 2d 1231, 1251 (C.D. Cal. 2008) (citing *Johnson v. ITT Indus., Inc.*, 41 Fed. App'x 73, 74 (9th Cir. July 2, 1999)).

### II. Analysis

In 2018, Washington enacted Senate Bill 5722 ("SB 5722"), which added performing conversion therapy that seeks to change an individual's sexual orientation or gender identity, on a patient under age eighteen, to a list of unprofessional conduct

---

[2] State Officer Defendants and MBC Defendants separately filed identical joint motion briefs. Dkts. 110-1, 111-1, 112-1 ("Mot. Brs.").

3

for licensed health care providers. *Tingley*, 47 F.4th at 1065-66. The Ninth Circuit upheld SB 5722 on two separate grounds, first, "as falling into the exception from heightened scrutiny for regulations on professional conduct that incidentally involve speech" and alternatively, "falling into the tradition of regulations on the practice of medical treatments." *Id.* at 1080.

### A. Professional Conduct

In *Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014),[3] the Ninth Circuit developed a "continuum approach" for determining whether a law regulated speech or conduct of professionals. *Tingley*, 47 F.4th at 1072. At one end of the continuum was "public dialogue," at the middle was "professional speech," and at the other end was "professional conduct." *Id.* at 1072-73. *Pickup* involved a California law prohibiting practicing conversion therapy on minor patients that was nearly identical to the Washington law at issue in *Tingley*. *Id*. at 1063. The *Pickup* court held that the California law regulated professional conduct, not speech, because it regulated only treatment and still permitted therapists to discuss conversion therapy and recommend patients obtain such therapy through other sources. *Tingley*, 47 F.4th at 1073 (citing *Pickup*, 740 F.3d at 1229).

In *NIFLA*, 138 S. Ct. at 2375, the Supreme Court abrogated the professional speech doctrine, holding that professional speech is not "a unique category [of speech] that is exempt from ordinary First Amendment principles." As the Ninth Circuit recognized in *Tingley*, 47 F.4th at 1074, "[t]here is no question that *NIFLA* abrogated the professional speech doctrine, and its treatment of all professional speech *per se* as being subject to intermediate scrutiny." However, *Tingley*, clarified that "the regulation of professional conduct, even if it 'incidentally burden[s] speech' …

---

[3] *Pickup* was abrogated in part by *National Institute of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371-72 (2018) ("*NIFLA*"), as discussed below.

4

survives *NIFLA*." *Id.* at 1075. Accordingly, the Ninth Circuit applied the professional conduct doctrine from *Pickup* to the Washington law. *Tingley*, 47 F.4th at 1077.

Defendants contend the documentation requirement in Section 443.14(e)(2) involves professional conduct, not speech, and thus it is not subject to strict scrutiny. Mot. Brs. at 5. The court disagrees. The Washington law at issue in *Tingley* involved the *prohibition* of a particular *treatment* – conversion therapy. Thus, the law prevented doctors from conducting such therapy on minors. This was an example of a *prohibition* on *conduct*. In contrast, the law at issue in *NIFLA* required a clinic to "disseminate a government-drafted notice." *NIFLA*, 138 S. Ct. at 2369. This was an example of *compelled speech*.

Here, the Act compels non-participating providers to affirmatively "document the individual's date of request and provider's notice to the individual of their objection in the medical record[.]" Cal. Health & Safety Code § 443.14(e)(2). Such a requirement is more akin to the notice requirement in *NIFLA*, which required clinics to disseminate "a government-drafted script about the availability of state-sponsored services," *NIFLA*, 138 S. Ct. at 2371, than it is to a regulation of treatment. As the Supreme Court recognized, the disclosure in *NIFLA* "compell[ed] individuals to speak a particular message"; thus, strict scrutiny applied. *Id.* (citation omitted). Here, the Act goes even further, requiring medical providers to document a request that can then be used to satisfy the requirements to obtain aid-in-dying drugs. *See* Cal. Health & Safety Code § 443.3(a).

Unlike in *Tingley*, Section 443.14(e)(2) does not regulate medical treatment by a medical provider and imposes instead a documentation requirement on providers who *refuse* to provide aid-in-dying drugs and related medical advice. Contrary to Defendants' assertion, the documentation requirement in the Act is not an "ordinary ministerial part of medical practice." Dkts. 117, 118 ("Opp'n Brs.") at 4. The Act imposes an affirmative obligation, despite the provider's statutory right to refuse to participate. *See* Cal. Health & Safety Code §§ 443.3(a), 443.14(e)(1), (3). Thus, the

documentation requirement is compelled speech that falls outside the scope of regulation of professional conduct, and strict scrutiny applies.

### B. Speech Belonging to a Long Tradition of Regulations

In addition to relying on its holding in *Pickup*, the Ninth Circuit in *Tingley* noted "[t]he Supreme Court has recognized that laws regulating categories of speech belonging to a 'long ... tradition' of restriction are subject to lesser scrutiny." *Tingley*, 47 F.4th at 1079. However, the Supreme Court was clear that such "precedents do not recognize such a tradition for a category called 'professional speech.'" *NIFLA*, 138 S. Ct. at 2372. While recognizing that *NIFLA* "rejected that professional speech, as a category, is subject to lesser scrutiny under the First Amendment," the Ninth Circuit held "[t]here is a long … tradition of regulation governing *the practice* of those who provide health care within state borders." *Tingley*, 47 F.4th at 1080 (emphasis added).

In particular, the Ninth Circuit recognized there is a long tradition of regulations pursuant to "the right of the government to regulate what medical treatments its licensed health care providers could practice on their patients according to the applicable standard of care and governing consensus at the time …." *Id.* at 1081. As the court explained: "[t]he health professions differ from other licensed professions because they *treat* other humans, and their treatment can result in physical and psychological harm to their patients." *Id.* at 1083 (emphasis in original). Ultimately, *Tingley* found the prohibition against conversion therapy fell within the scope of the long tradition of regulation of medical treatments, regardless of the use of speech to provide treatment. *Id.* ("That some of the health providers falling under the sweep of Wash. Rev. Code § 18.130 use speech to treat those conditions is 'incidental[].' [Citation.] The treatment can be regulated all the same.").

Defendants argue even if the Act regulates speech, it fits within *Tingley's* alternative category of lesser protected speech. Mot. Brs. at 6. The court disagrees. The tradition of regulation recognized in *Tingley* concerned "substantive regulations on medical treatments." *Tingley*, 47 F.4th at 1081. Here, in contrast, Section

6

443.14(e)(2) imposes affirmative requirements on a provider who *refuses* to provide end of life treatment—forcing the provider to engage in written speech that satisfies one of the mandatory steps for an individual to obtain aid-in-dying drugs—even if the provider refuses otherwise to evaluate the requesting individual or participate under the Act. Defendants do not submit evidence of a long tradition of regulations that impose such documentation requirements on healthcare providers (or other professionals) who refuse to provide such treatment. *See* Mot. Brs. at 5-7.

If the court were to accept Defendants' argument that all "speech uttered by health care providers in the course of their practice" is subject to lesser scrutiny, Mot. Brs. at 8, such holding would eviscerate the Supreme Court's holding in *NIFLA*, 138 S. Ct. at 2372. While the Ninth Circuit has found the existence of a tradition of regulating the type of treatment a medical provider can practice, *Tingley*, 47 F.4th at 1080-81, this category does not logically extend to include the affirmative documentation requirement in Section 443.14(e)(2). The documentation requirement in the Act is distinct from the prohibition on conduct at issue in *Tingley*, which only incidentally involves speech. Accordingly, the court does not apply a lower level of scrutiny to the documentation requirement in Section 443.14(e)(2).

/ / /

/ / /

/ / /

**CONCLUSION**

For the foregoing reasons, the court DENIES Defendants' Joint Motion for Reconsideration (Dkts. 110, 111, 112), and DECLINES to reverse and vacate the September 2, 2022 Order granting in part Plaintiffs' Motion for Preliminary Injunction (Dkt. 108).

IT IS SO ORDERED.

Dated: November 21, 2022

_____
FERNANDO L. AENLLE-ROCHA
United States District Judge